**TEXAS DEPARTMENT OF PUBLIC
SAFETY, Petitioner,**

v.

**Elbert Kenneth RICHARDSON, Respondent.**

**No. A–10071.**

Supreme Court of Texas.

Nov. 11, 1964.

Rehearing Denied Dec. 16, 1964.

Henry Wade, Dist. Atty., and John J. Orvis, Asst. Dist. Atty., Dallas, for petitioner.

J. M. Deavenport, Dallas, and Tom Upchurch, Jr., Amarillo, for respondent.

NORVELL, Justice.

This is a driver's license case. The Dallas Corporation Court No. 4 made an affirmative finding that respondent, Elbert Kenneth Richardson, was an habitual violator of the traffic law as defined in Article 6687b, § 22(b) (4).[1] The petitioner, Texas Department of Public Safety then suspended Richardson's license for a period of one year. Richardson appealed to the Dallas County Court at Law No. 2 in accordance with the provisions of Article 6687b, § 22 (c). That Court rendered a summary judgment upholding the Department's order of suspension. This judgment was reversed by the Court of Civil Appeals and a new trial ordered. See, Richardson v. Texas Department of Public Safety, Tex.Civ.App.,

375 S.W.2d 559 and the opinion referred to therein, namely, Miller v. Texas Department of Public Safety, Tex.Civ.App., 375 S.W.2d 468.

By its first point and those ancillary thereto, the petitioner asserts that the Court of Civil Appeals erred in sustaining a collateral attack upon the judgments which were the bases of the Department's suspension order. We sustain this contention and reverse the judgment of the Court of Civil Appeals and affirm the judgment of the County Court at Law.

Article 6687b, § 22(a) (b) authorizes the Texas Department of Public Safety to suspend the drivers license of an individual if he is physically incapable of driving a motor vehicle, has permitted the unlawful or fraudulent use of his license or has been guilty of certain specified acts or omissions. The license of "an habitual violator of the traffic law" may be suspended and an "habitual violator" is defined as being any "person with four or more convictions arising out of different transactions in a consecutive period of twelve (12) months, * * * such convictions being for moving violations of the traffic laws of the State of Texas or its political subdivisions." Article 6687b, § 22(b) (4).

■ The motion for summary judgment filed in the County Court at Law by the petitioner shows that on August 3, 1962, an administrative hearing was held before the Dallas Corporation Court; that the respondent was found to be an habitual violator of the traffic law and that on September 19, 1962, the respondent's driving privileges were suspended. Attached to this motion were properly authenticated copies of four notices of conviction for moving traffic violations occurring between March 19, 1961 and March 18, 1962. These notices or abstracts of convictions were reports made upon forms furnished by the Department of Public Safety for the purpose of securing information as to judgments of convictions

---

1. Article references are to Vernon's Ann.Tex.Civ.Stats.

for traffic violations rendered by the corporation courts and the justice of peace courts of the State of Texas. The notices or reports attached to the motion for summary judgment are in substantial compliance with the provisions of Article 6701d, § 152 and were admissible in evidence. Article 3731a, Rice v. State, 163 Tex.Cr.R. 367, 292 S.W.2d 114 (1956); Tatum v. Texas Department of Public Safety, Tex.Civ.App., 241 S.W.2d 167, wr. ref. (1951); Texas Department of Public Safety v. Jackson, Tex.Civ.App., 272 S.W.2d 577, no wr. hist. (1954); McPeak v. Texas Department of Public Safety, Tex.Civ.App., 346 S.W.2d 138, no wr. hist. (1961); Cooley v. Texas Department of Public Safety, Tex.Civ. App., 348 S.W.2d 267, wr. ref. (1961).

The respondent attempted to show by a summary judgment affidavit, sworn to by his attorney, that two of the convictions relied upon by the Department to support its order of suspension were illegal "because he did not appear in open court and plead guilty, nor was he guilty of such offense, nor was he tried in open court on said day and date either in person or by attorney, nor was there a forfeiture of any bail or collateral deposited with said court in said cause for any purpose and if so said forfeiture had been vacated."

The notices or abstracts of convictions relating to the convictions attacked by Richardson relate to speeding offenses committed on May 6, 1961 and March 18, 1962. These notices show on their face that Richardson was convicted of such speeding offenses on May 18, 1961 and March 28, 1962, respectively and that in each case a ten dollar fine was paid and a receipt issued.

The answer to the motion for summary judgment did not have copies of the judgments (as distinguished from the notices of conviction) attached to it in order to show (if such be the case) that there was a variance between the judgments and the notices of judgment. In Cooley v. Texas Department of Public Safety, Tex.Civ.App.,

348 S.W.2d 267, no wr. hist. (1961), it was said that:

"Since the notices of conviction were admissible, they, when incorporated in the motion for summary judgment, were prima facie evidence of the matters stated therein. Rice v. State, 163 Tex.Cr.R. 367, 292 S.W.2d 114. It was then incumbent upon appellant to contradict or rebut the validity of the convictions and the suspension order."

The notices show that Richardson was convicted of moving traffic violations as stated therein. In the present state of the record, we must presume that the notices correctly reflect the provisions of the respective judgments upon which they are based. The question then presented is, can these convictions be impeached by the statement of Richardson's lawyer that Richardson was not present in court when the judgments of conviction were rendered? In our opinion this question must be answered in the negative. There is nothing in the notices or abstracts of conviction which indicates that there was anything irregular about the judgments upon which they are based. On the contrary, they show by their recitations that Elbert Kenneth Richardson of Dallas, Texas, the holder of Driver's License No. 3392257, was convicted upon charges of having committed four moving traffic offenses. These judgments of convictions represented by the abstracts of conviction were rendered by courts having criminal jurisdiction. Unless the invalidity of these judgments is proclaimed upon the face of the judgments themselves, such judgments in this proceeding are to be afforded verity until set aside by a court having jurisdiction to do so. In Murchison v. White, 54 Tex. 78, decided in 1880, this Court said:

"[T]he judgment of a court having jurisdiction, if so irregularly or erroneously rendered as to make it liable to be vacated by a direct proceeding for this purpose, or to be reversed on ap-

peal of writ of error, is nevertheless valid until thus vacated or reversed. * * *

"It is believed that a careful analysis of the cases on this subject will show that, in a collateral proceeding, the only contingency in which the judgment of a domestic court of general jurisdiction, which has assumed to act in a case over which it might by law take jurisdiction of the subject matter and the person, can be questioned, is when the record shows *affirmatively* that its jurisdiction did not attach in the particular case."

See also, Harkness v. Hutcherson, 90 Tex. 383, 38 S.W. 1120 (1897) relating to a judgment of a justice of the peace; 34 Tex.Jur.2d, Judgments, §§ 325, 331, 332 & 355. Cf. Wilkerson v. Schoonmaker, 77 Tex. 615, 14 S.W. 223, relating to the collateral impeachment of judgment of a justice of the peace when the judgment contained no recitation of service. In this case it is not contended that Richardson was not summoned to appear in the speeding cases.

The case of Department of Public Safety v. Elmore, Tex.Civ.App., 284 S.W.2d 178, no wr. hist. (1955) treats of a somewhat similar situation to that presented here. It appears that a judgment had been rendered against Jodie Elmore and Jesse Elmore and in favor of W. C. Kerr for $450.00. This judgment was not satisfied and the Texas Department of Public Safety, acting under authority of Sections 13 and 14 of the Texas Motor Vehicle Safety Responsibility Act (Article 6701h, §§ 13 and 14) suspended the licenses of both Jodie and Jesse Elmore. Jodie Elmore appealed to the Dallas County Court at Law No. 1 which set aside the Department's order of suspension on the stated grounds that at the time of the accident, which was the basis of the Kerr judgment, Jodie Elmore was neither the owner nor the driver of the automobile involved therein but that on the contrary said automobile was driven by Walter Miller for and on behalf of W. C. Kerr. The County Court at Law concluded that Jodie Elmore was not liable or responsible in any respect under the Safety Responsibility Law of Texas and accordingly judgment was rendered setting aside the suspension order. The Court of Civil Appeals, in reversing, said:

"It is apparent on the face of the record that the findings of fact and conclusions of law filed by the trial judge in this cause and the judgment entered thereon collaterally attack the judgment entered in the 101st District Court of Dallas County. Needless to say that neither the County Court at Law of Dallas County, nor the Department of Public Safety, had jurisdiction to retry the question of liability that was decided in the 101st District Court, and it necessarily follows that the attempt of the trial court to do so is a collateral attack upon the judgment rendered in the District Court, and that the judgment of the County Court cannot stand."

The Court of Civil Appeals in its decision herein relied upon the case of Texas Department of Public Safety v. Williams, Tex. Civ.App., 356 S.W.2d 848, no wr. hist. (1962). See also, Palmer v. Texas Department of Public Safety, Tex.Civ.App., 374 S.W.2d 347, no wr. hist. (1963), which follows the Williams case. We seriously doubt if the question of collateral attack was raised in the Williams case. If *Williams* be construed as holding that a judgment of conviction for a traffic violation may be collaterally attacked upon an appeal from the Department's order suspending a drivers license, such construction does not meet with our approval. The authority cited in *Williams* is Mooneyhan v. Benedict, Tev.Civ. App., 284 S.W.2d 741, ref. n. r. e. (1955) which passed upon the admissibility of a judgment of conviction for a traffic violation in a damage suit growing out of such collision. The point involved related to the law governing the admissibility in evidence of "admissions" such as a plea of guilty. This is made abundantly clear by the cita-

tion to Fisher v. Leach, Tex.Civ.App., 221 S.W.2d 384, wr. ref. n. r. e. (1949) in which it was held that a plea of guilty to the charge of aggravated assault with a motor vehicle was admissible as an admission in a civil case growing out of the same occurrence as the criminal charge. There was no question of collateral attacks on judgments involved in either Mooneyhan v. Benedict or Fisher v. Leach. In connection with the admission of judgments of convictions in misdemeanor cases as distinguished from pleas of guilty (admissions), see Article 6701d, § 151.

The briefs of the parties contain some discussion as to whether or not the review in the County Court (or County Court at Law) under the provisions of Article 6687b, § 22(c) is a trial *de novo* or is controlled by the so-called substantial evidence rule which is generally applied to ascertain whether or not an administrative order is arbitrary or capricious. We do not reach this question under the present record. As pointed out in Texas Department of Public Safety v. King, Tex.Sup., 366 S.W. 2d 215 (1963), the question of the duration of the suspension of the license is a matter resting within the discretion of the Department and can only be disturbed upon a showing of an abuse of discretion. As to whether or not Richardson is an habitual violator of the traffic law as defined by the statute, the Department established that he is by proper summary judgment evidence which was not efficiently contradicted by Richardson. It was therefore established conclusively as a matter of law that Richardson is an habitual violator of the traffic law. In this case the question of *de novo* or substantial evidence review of the habitual violator issue is purely academic.

We agree with the Court of Civil Appeals that the hearing afforded Richardson in the County Court at Law rendered harmless any defect there might have been in the notice given with reference to the administrative hearing held before the Dallas Corporation Court.

We are not unmindful of the case of Padillo v. State, 159 Tex.Cr.R. 435, 264 S.W.2d 715 (1954) in which it was held by a divided court that in a misdemeanor case in which an enhanced punishment was sought, because of a prior conviction, inquiry could be made as to whether or not the provisions of Article 580, Vernon's Ann. Code of Criminal Procedure, had been complied with in the first case. This because the circumstances of a prior offense could be considered by a jury in determining the penalty to be assessed. But, it should be made abundantly clear that in this case we are not concerned with criminal penalties but rather with an administrative and regulative power vested in the Texas Department of Public Safety which power has for its purpose the protection of the lives and property of those using the highways. A driver's license is not suspended for the purpose of visiting additional punishment upon an offender but in order to protect the public against incompetent and careless drivers. Davidson v. State, 166 Tex.Cr.R. 376, 313 S.W.2d 883 (1958). It is clear that one making use of the highways of the state is exercising a privilege which is subject to regulation. Gillaspie v. Texas Department of Public Safety, 152 Tex. 459, 259 S.W.2d 177 (1953). The regulatory scheme is designed in part to meet the convenience of the members of the traveling public who are not charged with major offenses such as negligent homicide or driving while under the influence of narcotics. Unless a person arrested for a misdemeanor demands an immediate appearance before a magistrate, he may agree to appear at a future date. Article 6701d, § 148. From an administrative viewpoint it would be anomalous to say that an offender who had failed to keep his promise to appear and actually committed a further offense, Article 6701d, § 149, had thereby placed himself beyond administrative control, although he had sent the amount of the fine fixed for the offense with which he was charged to the court before which he promised to appear. If he wishes to attack any irregular judg-

ment against him which is not wholly void upon its record, the forum for such action is the court which rendered the judgment or in the court vested with authority to review such judgment. Here the respondent does not seek to set aside or avoid the punishment assessed for his law violation as, for example, is the case in the usual habeas corpus situation, but on the contrary seeks to avoid the administrative safety regulation by collaterally attacking in a civil court the criminal convictions rendered against him which are not shown to be invalid upon their records. This he cannot do.

The judgment of the Court of Civil Appeals is reversed and the judgment of the Dallas County Court at Law No. 2 is affirmed.