**Ex Parte James Martin THARP.**

No. 2–95–208–CR.

Court of Appeals of Texas,
Fort Worth.

Dec. 21, 1995.

Discretionary Review Granted
Feb. 28, 1996.

Greg Westfall, Jeff Kearney & Assoc., Fort Worth, for appellant.

Tim Curry, Crim. District Attorney, Charles M. Mallin, Betty Marshall, Asst. Chief Appellate Section, Debra Ann Windsor, Richard Alpert, Asst. Crim. Dist. Attorneys Fort Worth, for appellee.

Before CAYCE, C.J., and DAUPHINOT, J., and DAVID F. FARRIS, J., sitting by Assignment.

## OPINION

DAUPHINOT, Justice.

In this case, we consider whether the administrative driver's license suspension under Texas Revised Civil Statute article 6687b–1 [1] constitutes punishment for the purposes of double jeopardy analysis.[2] We grant Appellant's motion to amend his sole point of error and, consequently, our review of this issue will be limited only to the double jeopardy protection found in the United States Constitution, as no independent state constitutional claim has been asserted.

## FACTUAL AND PROCEDURAL BACKGROUND

James Martin Tharp, Appellant, was stopped and arrested on suspicion of driving while intoxicated on February 5, 1995. At the time of the arrest, a breathalyzer revealed that Tharp's blood-alcohol concentration was at least 0.10. Tharp was then served with notice of license suspension pursuant to article 6687b–1, section 2. Thereafter, the Texas Department of Public Safety suspended Tharp's license for 60 days according to section 6 of the civil statute because Tharp "provided a specimen of blood or breath and an analysis of the specimen showed an alcohol concentration of a level specified in Section 49.01, Texas Penal Code, following an arrest for an offense prohibiting the operation of a motor vehicle while intoxi-

---

1. Tex.Rev.Civ Stat Ann. art. 6687b–1 (Vernon Supp.1995).

2. The Federal Double Jeopardy Clause reads:

[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb; ..." U.S. Const amend. V.

cated."[3] Tharp's license was, in fact, suspended from March 17, 1995 to May 15, 1995.

Back on February 8, 1995, a misdemeanor information was filed, based on the same February 5th incident, charging Tharp with driving while intoxicated. Tharp filed an Application for Writ of Habeas Corpus on May 1, 1995 asserting that a subsequent criminal prosecution for driving while intoxicated was barred by double jeopardy because he had already been punished for the offense by the license suspension. The trial court denied Tharp the requested relief, and he now appeals that order.

## THE DOUBLE JEOPARDY CLAUSE APPLIED TO ARTICLE 6687b-1 AND TEXAS PENAL CODE SECTION 49.04

■ The Double Jeopardy Clause of the United States Constitution protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense.[4] Tharp's claim is based on the "multiple punishments" prong of the double jeopardy protections, essentially asserting that he is being subjected to two punishments for the "same offense."

### 1. Same Offense

■ In 1993, the United States Supreme Court re-established the *Blockburger* "same elements" test[5] as the proper criteria for analyzing double jeopardy and the sameness of offenses.[6] Under the "same elements" test, two statutes define *different* offenses

when "each provision requires proof of an additional fact which the other does not."[7]

The elements for the administrative license suspension, the same elements implemented in suspending Tharp's license, are found in TEX.REV.CIV.STAT.ANN. art. 6687b-1, § 7(b) (Vernon Supp.1995): (1) the person had a blood-alcohol concentration of 0.10 or more; (2) while driving or in actual physical control of a motor vehicle; (3) in a public place; and (4) reasonable suspicion or probable cause existed to stop or arrest the person.

Meanwhile, the information charging Tharp with the offense of driving while intoxicated in violation of the Texas Penal Code, section 49.04[8] contains the following elements: (1) driving or operating a motor vehicle; (2) in a public place; and (3) while intoxicated.

■ The State, at the hearing on the writ of habeas corpus, conceded that these statutes define the "same offense" for double jeopardy analysis. We agree with that assessment because while article 6687b-1 contains an element not found in section 49.04 (element four), the opposite is not true. Because the statutes describe the "same offense" under the *Blockburger* test, if the driver's license suspension under article 6687b-1 was punishment, then a subsequent prosecution for driving while intoxicated will be barred by double jeopardy.

### 2. Multiple Punishment

In *United States v. Halper*,[9] the United States Supreme Court held that whether a sanction is imposed in a civil or criminal proceeding is not determinative of whether the sanction constitutes punishment.[10] The Court stated that the protection against mul-

---

3. Quoting in part the Order of Suspension sent to Tharp from the Texas Department of Public Safety on March 21, 1995.

4. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65 (1969).

5. *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932).

6. *United States v. Dixon*, —— U.S. ——, ——, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556, 573 (1993); *see also Parrish v. State*, 869 S.W.2d 352, 354 (Tex.Crim.App.1994).

7. *Parrish*, 869 S.W.2d at 353 (quoting *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309).

8. TEX.PENAL CODE ANN. § 49.04 (Vernon Supp. 1996).

9. 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989).

10. *Id.* at 447, 109 S.Ct. at 1901, 104 L.Ed.2d at 501.

tiple punishments safeguarded by the Double Jeopardy Clause is "intrinsically personal" and that a violation of the Clause can only be detected by assessing the nature of the sanctions actually imposed on the individual by the state:

> To that end, the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment.[11]

The Court recognized that this inquiry into the civil sanction would be an inexact pursuit.[12] The Court, after noting that the traditional aims of punishment are retribution and deterrence, held that a civil sanction is punishment to the extent that it "may not fairly be characterized as remedial, but only as a deterrent or retribution." [13]

■ With the definitional test for punishment in place, we must then examine, following the United States Supreme Court analyses in *Austin v. United States* [14] and *Department of Revenue of Montana v. Kurth Ranch*,[15] two aspects of the license revocation to determine whether article 6687b–1 advances remedial or punitive purposes: (1) the historical understanding and traditional view of driver's license revocation; and (2) the actual operation and structure of article 6687b–1.

### A. Traditional View of Driver's License Revocation

■ Texas courts have long held that a driver's license is not a right, but a privilege.[16] In fact, the property interest involved does not even rise to the level that would require a right to appeal a revocation, absent statutory authority.[17] But once a driver's license is issued, proper constitutional safeguards must be followed before revoking that license.[18] Texas courts have held that the Due Process Clause of the Fourteenth Amendment to the United States Constitution would require no more than the right to a hearing before the revocation of a driver's license.[19]

Based on the fact that a driver's license is but a privilege, the State contends that this case is distinguishable from the sanctions analyzed by the United States Supreme Court in *Halper, Austin,* and *Kurth Ranch.* In *Halper,* the Government sought to fine the defendant more than $130,000 under the False Claims Act after he had already been convicted of violating the criminal false-claims statute.[20] Meanwhile, *Austin* and *Kurth Ranch* involve a federal civil forfeiture provision and a state tax imposed on the possession and storage of dangerous drugs. Clearly, the State is correct in its contention that a temporary driver's license revocation cannot be easily equated with the forfeiture of a person's land and money. On the one hand there is the permanent taking of a person's property, and, on the other, the temporary suspension of a privilege.

■ The State regulates many activities and occupations, such as driver's licenses, commercial licenses, and professional licenses to practice law or medicine. The rationale for this system of state regulation through licenses is that some activities and occupa-

11. *Id.* at 448, 109 S.Ct. at 1901–02, 104 L.Ed.2d at 501.

12. *Id.* at 449, 109 S.Ct. at 1902, 104 L.Ed.2d at 502.

13. *Id.* at 448–49, 109 S.Ct. at 1902, 104 L.Ed.2d at 502.

14. —— U.S. ——, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993).

15. —— U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994).

16. *Texas Dep't of Pub. Safety v. Schaejbe,* 687 S.W.2d 727, 728 (Tex.1985).

17. *Texas Dep't of Pub. Safety v. Quintero,* 818 S.W.2d 149, 154 (Tex.App.—Corpus Christi 1991, no writ).

18. *Nebes v. State,* 743 S.W.2d 729, 730 (Tex. App.—Houston [1st Dist.] 1987, no pet.).

19. *Quintero,* 818 S.W.2d at 154.

20. *Halper,* 490 U.S. at 437–38, 109 S.Ct. at 1896, 104 L.Ed.2d at 495.

tions would subject the public to an unreasonable risk of harm if they were allowed to exist unfettered. Under this state regulatory scheme, a person must first obtain a license from the State to pursue the regulated activity or occupation, with the State possessing the power to revoke the license. Yet, the United States Supreme Court has acknowledged that the continued possession of a driver's license may be essential to the pursuit of a livelihood and, also, that the suspension of a driver's license by the State involves "important interests" of the licensee.[21] Absent any authority that dictates absolutely that the revocation of a driver's license is inherently immune from double jeopardy scrutiny and in light of the three recent Supreme Court cases that constructively tear down past stereotypes regarding what can constitute punishment, we believe we cannot end our inquiry here.

The revocation of licenses and privileges in general have traditionally not been found to be punitive in nature:

> One [civil sanction] which is characteristically free of the punitive criminal element is revocation of a privilege voluntarily granted.[22]

Specifically, Texas courts have consistently held that revocations and suspensions of drivers' licenses are not intended as punishment, but designed solely for the protection of the public.[23] These revocations have been referred to as being "administrative" and "civil" in nature, recognizing the right of the State to regulate licenses.[24] In fact, as recently as 1987, the Dallas Court of Appeals held that the double jeopardy clauses of the Texas and Federal Constitutions are not applicable to administrative proceedings.[25] That case, however, predates the United States Supreme Court decision in *Halper*.

Yet in an analogous case decided after *Halper*, the Houston Court of Appeals (14th District) held that the suspension of a person's driver's license is not even an 'offense' for purposes of double jeopardy.[26] In that case, the appellant refused to submit to a breath or blood test. At the administrative hearing to determine whether the appellant's actions would result in the suspension of his driver's license, the municipal judge made a finding of insufficient probable cause. The appellant filed a writ of habeas corpus asserting that the State was barred from relitigating the issue of probable cause in the prosecution for driving while intoxicated. In response to his claim for double jeopardy, the court of appeals held that a "[s]uspension of a person's driver's license does not constitute an 'offense' for purposes of a defendant's protection against double jeopardy." [27]

As the above Texas case law sets out, the administrative suspension or revocation of a driver's license has traditionally been viewed as remedial action initiated by the need to protect the public by removing dangerous drivers from the streets, and not as punishment for committing a criminal offense or traffic violation. Because we are asked to examine whether an administrative driver's license suspension, which has historically been treated as remedial in nature, is punishment for double jeopardy purposes, we look to the United States Supreme Court analysis in *Kurth Ranch* for direction.

There the Supreme Court examined a state tax, traditionally not considered punitive in nature, imposed on the possession and storage of dangerous drugs. In *Kurth Ranch*, the question was whether a state tax on illegal drugs could constitute punishment for double jeopardy purposes. The Supreme Court began by noting that "whether a sanction constitutes punishment is not deter-

**21.** *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90, 94 (1971).

**22.** *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917, 922 (1938).

**23.** *Davison v. State*, 166 Tex.Crim. 376, 313 S.W.2d 883, 886 (1958) (op. on reh'g).

**24.** *Texas Dep't of Pub. Safety v. Richardson*, 384 S.W.2d 128, 132 (Tex.1964); *Raitano v. Texas*

*Dep't of Pub. Safety*, 860 S.W.2d 549, 551 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

**25.** *Burrows v. Texas Dep't of Pub. Safety*, 740 S.W.2d 19, 21 (Tex.App.—Dallas 1987, no writ).

**26.** *Walton v. State*, 831 S.W.2d 488, 491 (Tex. App.—Houston [14th Dist.] 1992, no pet.).

**27.** *Id.*

mined from the defendant's perspective, as even remedial sanctions carry the 'sting of punishment.'"[28] Importantly for the case before us, and somewhat contrary to the Court's holding in *Halper* and *Austin*, the Court also explained that although the tax had an obvious deterrent effect, it did not automatically constitute a form of punishment.[29] The Court stated that many taxes, such as the taxes on cigarettes and alcohol, are "motivated to some extent by an interest in deterrence," yet these taxes are not considered punishment for double jeopardy purposes.[30] The test the Court employed in *Kurth Ranch* to determine whether the tax was punishment acknowledged that taxes are typically motivated by revenue-raising purposes and, thus, asked whether the Montana illegal drug tax "depart[ed] so far from normal revenue laws as to become a form of punishment."[31]

Likewise, our question becomes whether the administrative license revocation under article 6687b–1 departs so far from normal license revocation laws as to become punishment. We reject Tharp's contention that the sole test for punishment is found in *Halper* and is simply that a "civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment."[32] Appellant is correct in that it is this language that the Court relied on in *Austin* in determining that a civil forfeiture provision was punishment for double jeopardy purposes.[33] But *Austin* is a case in which the underlying sanction, civil forfeiture, has historically been viewed, at least in part, as being punitive in nature.[34] Appellant also reads *Halper* and *Austin* too broadly in that the definition for punishment used in those cases to find the questioned statutes furthered punitive, rather than re-

medial, goals is case specific. This is acknowledged in *Kurth Ranch* where the Court does not use the definition for punishment established in *Halper* and *Austin*. Because *Kurth Ranch* is a case, like the one before us, where the questioned civil sanction traditionally has been seen as being purely remedial, we believe its analysis of this question better addresses the question before us.

## B. Particularized Assessment

In *Kurth Ranch*, the Court concluded that the tax in question did, in fact, significantly deviate from normal tax law and, consequently, constituted punishment because it: (1) was more than eight times the market value of the drugs in question; (2) was conditioned upon the commission of a crime; (3) was invoked only after the taxpayer had been arrested for the same conduct giving rise to the tax; and (4) was levied upon criminals and no others.[35] To better examine whether the driver's license revocation statute before us departs significantly from normal license revocation statutes, we must first analyze the statute itself.

The administrative license revocation under article 6687b–1 has been effective since January 1, 1995, and this case marks the first time its revocation provision has been subjected to double jeopardy scrutiny by an appellate court. It supplements article 6701*l*–5, § 2(f), which revokes a person's driver's license for refusing to submit to a breath or blood test when pulled over for the suspicion of driving while intoxicated. Under article 6687b–1, the arresting officer serves notice of driver's license suspension personally on the arrested person when the person submits to the taking of a specimen of breath or blood and the specimen shows the person had an alcohol concentration of .10 or

28. *Kurth Ranch*, —— U.S. at —— n. 14, 114 S.Ct. at 1945 n. 14, 128 L.Ed.2d at 777 n. 14.

29. *Id.* at ——, 114 S.Ct. at 1946, 128 L.Ed.2d at 779.

30. *Id.*

31. *Id.* at ——, 114 S.Ct. at 1948, 128 L.Ed.2d at 781.

32. *Halper*, 490 U.S. at 448, 109 S.Ct. at 1902, 104 L.Ed.2d at 502.

33. *See Austin*, —— U.S. at ——, 113 S.Ct. at 2812, 125 L.Ed.2d at 498.

34. *Id.* at ——, 113 S.Ct. at 2810, 125 L.Ed.2d at 503.

35. *Kurth Ranch*, —— U.S. ————, 114 S.Ct. at 1946–48, 128 L.Ed.2d at 780–81.

greater.[36] The officer sends a copy of the notice to the Department of Public Safety and, later, sends an arrest report to the department that states the grounds the officer had for believing the person committed the offense and provides the analysis of the specimen.[37] If, upon review of the report, the department determines that the person had an alcohol concentration of .10 or greater, it will suspend the person's driver's license.[38] Unless a hearing is requested, this determination is final.[39]

A hearing must be requested no later than 15 days after the date that the notice of suspension was given to the person by the officer.[40] The request stays the suspension of the driver's license until the hearing is held and a final determination is made by an administrative law judge.[41] The sole issue at the hearing is whether, by a preponderance of the evidence, the person had an alcohol concentration of .10 or greater "while driving or in actual physical control of a motor vehicle in a public place, and reasonable suspicion or probable cause existed to stop or arrest the person."[42] If the administrative law judge makes an affirmative finding, or if, in situations where a hearing is not timely requested, the determination is made that the person had an alcohol concentration of .10 or greater, then the suspension takes effect on the 40th day after the date the person received notice from the officer.[43] The period of suspension is 60 days for first time offenders, with lengthier suspensions for repeat alcohol-related offenders.[44]

Tharp begins his attack on article 6687b–1 by contending that it contains many "penal statute characteristics." First, Tharp states that section 5(d) of article 6687b–1 serves as the statute's "built-in expunction mechanism." That section mandates that a suspension be expunged from the record of the driver if the driver is ultimately acquitted at

trial of driving while intoxicated. Second, Tharp recognizes the mechanism found in section 6(c) for granting "credit" for the previous suspension against a subsequent suspension at trial as one common in penal statutes. Lastly, Tharp contends that the punitive nature of the statute is also apparent in section 6(b), which contains an "enhancement" mechanism that increases the punishment with each alcohol-related contact.

Additionally, Tharp complains that the manner in which the driver's license suspension under article 6687b–1 is carried out is not remedial in nature. Tharp states that there is "no rational relationship between a 60–day suspension and protecting the public." This, Tharp concludes, is because the suspension does not even commence until 40 days after the arrest, and because the 60–day suspension is "simply an arbitrary period of suspension adjudged against anyone who is arrested on suspicion of driving while intoxicated." Tharp's argument is essentially that a fixed 60–day suspension is not a corrective or curative remedy in that there is no guarantee that the driver will alter his behavior during that time and, either way, the license automatically returns to the defendant at the completion of that time. At oral submission, Tharp argued that if the length of suspension were contingent upon the defendant's completion of an alcohol awareness program, then the penalty would be more remedial than the current 60–day fixed suspension.

Tharp argues further that many of the factors the Court relied on in holding that the tax constituted punishment in *Kurth Ranch* are also present in the case before us. Tharp points out that "a driver cannot get his license suspended under article 6687b–1 for any conduct other than that which will also subject him to prosecution for driving while intoxicated." Likewise, the suspension is placed only upon criminals following the

---

36. Tex.Rev.Civ.Stat.Ann. art. 6687b–1, § 2 (Vernon Supp.1995).

37. *Id.* §§ 2, 3.

38. *Id.* § 5.

39. *Id.*

40. *Id.* § 7.

41. *Id.*

42. *Id.* § 7(b).

43. *Id.* § 6(a)(1).

44. *Id.* § 6(b).

commission of a crime. But in *Kurth Ranch*, the Court also relied on the fact that the tax was "remarkably high." [45] The severity of the tax, almost $900,000, influenced the Court's decision to find that the tax constituted punishment. That element is missing in the case before us; a 60–day driver's license suspension is not the kind of unusual "anomaly" the Court addressed in *Kurth Ranch*.

The State counters Tharp's allegations by asserting that the suspension under article 6687b–1 follows traditional revocation purposes and is remedial in nature, explaining that the primary objective behind the suspension is to promote public safety by quickly getting drunk drivers off the roads. And while the Court noted in *Kurth Ranch* that the normal purpose behind a tax is revenue raising, we similarly acknowledge that the normal purpose behind license revocations, regardless of the variety of license involved, is to protect the public from persons who, through the use of their license, have endangered or harmed others. Whether it is suspending the license of a negligent doctor or attorney or whether it is simply the revocation of a driver's license, the rationale has always been the same—to protect the public. Removing from offenders their license to engage in the activity, when they have displayed an inability to make proper and safe use of the privilege, is a common-sense and practical approach to ensuring that they will not endanger the public in the future.

■ Consequently, while we recognize the merit of Tharp's contentions and criticisms of the suspension under article 6687b–1, we still ultimately hold that the driver's license suspension under article 6687b–1 is not so far removed from normal administrative license revocations as to constitute punishment. We even agree with Tharp that the State legislature could have drafted a much more remedial statute than the one before us, and we encourage the legislature to do so. There is no question but that article 6687b–1 has, at least to a certain degree, punitive characteristics. But the test is not, as Tharp argued,

whether the State could show that the suspension serves solely a remedial purpose. As discussed earlier in the opinion, the Court in *Kurth Ranch* held that just because a civil sanction carried an obvious deterrent effect did not necessarily render it punishment for double jeopardy purposes.[46] Rather the Court asked whether the tax departed so far from normal revenue laws as to become a form of punishment, ultimately concluding that it did:

> Taken as a whole, this drug tax is a concoction of anomalies, too far-removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of Double Jeopardy analysis.[47]

We ask the same question in this case and conclude that, taken as a whole, the driver's license suspension under article 6687b–1 is not too far-removed from standard revocation statutes to constitute punishment for double jeopardy purposes. We find that, despite this statute's drawbacks and punitive characteristics, it still primarily furthers the State's remedial goal of quickly protecting the public from drunk drivers. The extent to which it furthers the goals of punishment does not rise to the level necessary to label the statute punitive in nature.

We hold that the driver's license suspension under article 6687b–1 does not constitute punishment for double jeopardy purposes. And, therefore, a prosecution under section 49.04 of the Texas Penal Code, following a driver's license suspension under article 6687b–1, does not violate the protection against multiple punishments found in the Fifth Amendment to the United States Constitution.

We affirm the trial court's denial of the Habeas Corpus relief sought by Tharp.

**45.** *Kurth Ranch,* —— U.S. at ——, 114 S.Ct. at 1946, 128 L.Ed.2d at 779.

**46.** *Id.*

**47.** *Id.* at ——, 114 S.Ct at 1948, 128 L.Ed.2d at 781.