**Ex Parte James Martin THARP, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 168–96.**

Court of Criminal Appeals of Texas, En Banc.

Nov. 27, 1996.

Greg Westfall, Fort Worth, for appellant.

Debra Ann Windsor, Asst. Dist. Atty., Fort Worth, Matthew Paul, State's Atty., Austin, for State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MANSFIELD, Judge.

Appellant, James Martin Tharp, was stopped on February 5, 1995 and arrested for suspicion of driving while intoxicated by a Fort Worth police officer. Appellant agreed to provide a specimen of his breath at the time of his arrest so that it could be tested for alcohol concentration. The test revealed an alcohol concentration level of at least 0.10. Appellant was served with notice of license suspension pursuant to Texas Revised Civil Stat. Article 6687b–1. Subsequently, the Department of Public Safety suspended appellant's driver's license for sixty days because the test performed on his breath specimen revealed an alcohol concentration of a level specified in Texas Penal Code 49.01 following an arrest for the offense of operation of a motor vehicle while intoxicated.

On February 8, 1995 an information was filed in Tarrant County Criminal Court Number 8, charging appellant with the misdemeanor offense of driving while intoxicated. Appellant filed a pretrial application for Writ of Habeas Corpus on May 1, 1995, averring double jeopardy barred the prosecution of the driving while intoxicated charge. After a hearing, the County Court denied relief, finding the administrative license revocation hearing was an administrative hearing and finding, in effect, the license suspension served a remedial purpose and was not punishment for purposes of implicating double jeopardy.

The Second Court of Appeals subsequently affirmed the judgment of the County Court. *Ex parte Tharp*, 912 S.W.2d 887 (Tex.App.-Fort Worth 1995) (pet.granted). In its opinion, the court of appeals first held, citing *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), *United States v. Dixon*, 509 U.S. 688, 696–97, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993) and *Parrish v. State*, 869 S.W.2d 352, 354 (Tex.Crim.App.1994), that Texas Revised Civil Stat. Article 6687b–1 and driving while intoxicated under Texas Penal Code § 49.04 constitute the "same offense" for double jeopardy purposes. *Tharp, supra*, at 889. The court noted all of the elements of driving while intoxicated under Texas Penal Code 49.04 are included in the elements for administrative license revocation under Article 6687b–1; thus, applying the "same elements" test of *Blockburger*, the two constitute the "same offense."

The court then addressed whether the sixty-day license revocation under Article 6687b–1 is "punishment" for purposes of im-

plicating double jeopardy. The court found the purpose of the Texas administrative license revocation scheme to be primarily remedial, noting that a license to drive is a privilege and not a right, and noting further the temporary nature of the revocation. *Tharp, supra,* at 890–891. The court also noted, citing *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), that drivers' license revocations under Article 6687b–1 are not so far removed from normal administrative license revocations as to constitute punishment. *Tharp, supra,* at 894.[1] The court did acknowledge Article 6687b–1 has some punitive/deterrent aspects but found it still primarily furthers the State's remedial goal of quickly protecting the public from drunk drivers.

This Court granted appellant's petition for discretionary review to consider the following ground for review:

Did the court of appeals err in holding that a driver's license suspension under Texas Revised Civil Stat. Annotated Article 6687b–1 does not constitute "punishment" for double jeopardy purposes under the Fifth Amendment to the United States Constitution?

We first consider whether the civil penalty assessed under Tex.Rev.Civ. Stat. art. 6687b–1—suspension of one's driver's license for sixty days plus a fee of $100 to reinstate the license following completion of the suspension period—constitutes "punishment" for the purpose of federal double jeopardy analysis. In *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the Supreme Court held that "the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the *purposes* that the penalty may fairly be said to serve." *Halper,* 490 U.S. at 448, 109 S.Ct. at 1901 (emphasis added). The Court further held "that in determining whether a particular civil sanction constitutes

criminal punishment, it is the purposes actually served by the sanction in question ... that must be evaluated." *Halper,* 490 U.S. at 447, n. 7, 109 S.Ct. at 1901, n. 7.

The primary purpose of the administrative license suspension statute is not to deter the licensee or to seek retribution, but is to protect the public from the carnage on the public roads of Texas caused by drunk drivers. This primary purpose is clearly remedial, although it also has a secondary deterrent effect on motorists who realize that an arrest for driving while intoxicated may well result in suspension of their licenses. As the Third Court of Appeals has explained:

The nature of the interest and the rights that a licensee has in a driver's license has been addressed by Texas courts for almost half a century. A driver's license is not a right, but a privilege. Driving is not a constitutionally protected right, but a privilege. A license to drive an automobile on the streets is ... a privilege subject to reasonable regulations formulated under the police power in the interest of the welfare and safety of the general public.... The revocation of a driver's license is not intended as punishment but is designed solely for the protection of the public in the use of the highways. In *Texas Dept. of Pub. Safety v. Richardson,* 384 S.W.2d 128 (Tex.1964), the court stated that it was not concerned with criminal penalties because a driver's license is not suspended as additional punishment; rather it comes with an administrative and regulatory power vested in the Department of Public Safety for the purpose of protecting the lives and property of those using the highway.

*Ex parte Arnold,* 916 S.W.2d 640, 642 (Tex. App.—Austin 1996) (citations omitted). See also *Ex parte Tharp,* 912 S.W.2d 887, 890–891 (Tex.App.—Fort Worth 1995) (pet.grtd.)

---

1. The court of appeals contrasted the temporary sixty-day suspension of a privilege (i.e. the license to drive), under Article 6687b–1, to the rate of tax assessed under the statute at issue in *Kurth Ranch* (eight times the value of the property taxed). The court found the sixty-day suspension was not the kind of "anomaly" addressed by the Supreme Court in *Kurth Ranch* as part of its holding that the Montana statute was not a bona fide tax statute, but was, in reality, a punitive law intended to punish drug dealers.

(administrative license revocation not considered punishment).[2]

The Supreme Court has noted that an "obviously deterrent purpose" did not automatically make a tax assessed on illegal substances a form of "punishment." *Department of Revenue v. Kurth Ranch*, 511 U.S. 767, 780, 114 S.Ct. 1937, 1946, 128 L.Ed.2d 767 (1994). We recognize that the individual who has lost his license for sixty days and has to pay $100 to have it reinstated certainly may feel he has been "punished." However, the individual's perspective does not determine whether a civil sanction constitutes "punishment." The Supreme Court has recognized that even remedial sanctions, for the individual, may carry the sting of punishment. "[W]e hold merely that in determining whether a particular civil sanction constitutes criminal punishment, it is the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated." *Halper*, 490 U.S. at 447 n. 7, 109 S.Ct. at 1901, n. 7.

In *Halper*, the civil sanction imposed—$130,000—was over 200 times the amount of the loss to the government caused by Halper's criminal activity (for which he had already received a prison term and a substantial fine). The civil sanction was greatly in excess of the costs incurred by the government in prosecuting Halper, which was approximately $16,000. The Supreme Court did hold a civil sanction following a criminal prosecution that fairly compensates the government for its costs of prosecution and actual damages is remedial in nature, is not punishment, and does not implicate the Double Jeopardy Clause of the Fifth Amendment. *Halper*, 490 U.S. at 448–50, 109 S.Ct. at 1902. The sanction at issue in *Halper* was found to be punishment due to its being grossly in excess of the amount needed to compensate the government for its damages and costs. In *Kurth Ranch*, the Supreme Court, in effect, found that the tax imposed on drug dealers was a punishment masquerading as a tax for several reasons, among them being the rate of tax exceeded the value of the substance taxed by over 800%. *Kurth Ranch*, 511 U.S. at 780–783, 114 S.Ct. at 1946–1948.

Appellant does not persuade us that the relatively mild sanction imposed under Tex. Rev.Civ. Stat. art. 6687b–1 is of a magnitude to exceed what is reasonably necessary to accomplish the remedial goal of keeping drunk drivers off the road. Compare the temporary inconvenience to appellant of a relatively brief license suspension to the *permanent* loss of $130,000 faced by Halper, and it is difficult to find such a sanction to be so excessive (like that imposed on Halper) as to implicate appellant's double jeopardy rights, thereby precluding a subsequent driving while intoxicated prosecution.[3]

Several of the courts of appeals have recently held that the suspension of an individual's driver's license pursuant to the administrative license revocation statute does not constitute "punishment" for the "same offense," so as to preclude, on double jeopardy grounds, the subsequent prosecution of that individual for the offense of driving while intoxicated. *Helber v. State*, 915 S.W.2d 955 (Tex.App.—Houston [1st] 1996); *Ex parte Arnold, supra; Ex parte Tharp, supra; Arnold v. State*, 920 S.W.2d 704 (Tex.App.—Houston [1st] 1996). The courts of appeals

---

**2.** Appellant's brief quotes numerous examples from the legislative history which refer to the license revocation provision at issue as serving a deterrent effect. However, even within the legislative language quoted by appellant is language supporting a conclusion that the purpose of the provision was to protect the public from drunk drivers:

> REP. GREENBURG: ... [The bill providing for administrative license revocation] also will deter those who drink and drive before they have a crash and hurt themselves or someone else.
> REP. WOLENS: What states have found after they have passed [such a bill] is that the inci-

dents of deaths on the highway as a result of alcohol has dropped dramatically.

> REP. GREENBURG: ... [This bill] will provide a valid means to deter drunk driving and to save lives.... We are trying to get drunk drivers off the road.

**3.** We also note that appellant, even during the period of suspension, could apply for an occupational license upon a showing of need to drive to get to work, to go to school or to perform "essential household duties." *See* Tex.Transp.Code 521.241–521.246.

focused on the civil aspects of the administrative license revocation statute and procedure, as well as the relatively mild sanction imposed pursuant thereto, in concluding the sixty day license suspension to be "remedial" and not a "punishment." We find the reasoning of the courts of appeals on this matter to be sound and hold that the administrative suspension of appellant's license under Tex. Rev.Civ. Stat. art. 6687b–1 did not constitute punishment for purposes of the Double Jeopardy Clause of the Fifth Amendment. Therefore, appellant's subsequent prosecution for driving while intoxicated does not implicate his protection under the Double Jeopardy Clause against multiple punishments for the same offense. See *Ex parte Broxton*, 888 S.W.2d 23, 25 (Tex.Crim.App. 1994); *Lofton v. State*, 777 S.W.2d 96, 97 (Tex.Crim.App.1989).

Most of the highest courts of other states that have addressed this matter have held an administrative driver's license revocation is a remedial civil sanction and does not constitute "punishment" implicating the licensee's double jeopardy rights. See, e.g., *State v. Savard*, 659 A.2d 1265 (Me.1995); *Rushworth v. Registrar of Motor Vehicles*, 413 Mass. 265, 596 N.E.2d 340 (1992); *State v. Hickam*, 235 Conn. 614, 668 A.2d 1321 (1995); *State v. Hanson*, 543 N.W.2d 84 (Minn.1996); *State v. Higa*, 79 Hawai'i 1, 897 P.2d 928 (1995); *State v. Funke*, 531 N.W.2d 124 (Iowa 1995); *State v. Mertz*, 258 Kan. 745, 907 P.2d 847 (1995); *North Carolina v. Oliver*, 343 N.C. 202, 470 S.E.2d 16 (1996).[4] Appellant does not cite any state highest court decisions as supporting authority. Although we are not bound by the decisions of the courts of other states, we do find it persuasive there is near-unanimity of agreement that administrative license revocations are not "punishments" for double jeopardy purposes.

The judgment of the court of appeals is AFFIRMED.

OVERSTREET, J., concurs in the result.

MEYERS, Judge, concurring.

In the last seven years, the United States Supreme Court has promulgated three opinions that may enlighten the issue before us today and each has suggested a different set of indicators by which to decide whether the government action in that case constitutes punishment for double jeopardy purposes. These indicators have differed, primarily, because of the type of governmental action in each case. In *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), the Court held that double jeopardy prohibits a civil sanction to be imposed in a separate proceeding against a defendant who has already been punished in a criminal prosecution when that sanction serves, at least in part, as a deterrent to or retribution for crime. The Court surmised that the size of the civil sanction in *Halper*, almost ten times the amount necessary to adequately compensate the government for both its actual loss and the costs incurred in investigating and prosecuting the person responsible for that loss, could only be explained as accommodating deterrent or retributive goals. As such, the sanction was not remedial but penal in nature and, therefore, prohibited by double jeopardy.

---

4. The Supreme Court of North Carolina, in upholding the North Carolina administrative license revocation statute, held:

"[T]he temporary ten-day driver's license revocation provided for in N.C.G.S. 20–16.5 and the $50 restoration fee are neither excessive nor overwhelmingly disproportionate responses to the immediate dangers an impaired driver poses to the public and himself. An impaired driver presents an immediate, emergency situation, and swift action is required to remove the unfit driver from the highways in order to protect the public. We do not pretend to ignore that a driver's license revocation, even of short duration, may for some, have a deterrent effect. However, as the United States Supreme Court recognized, whether a particular sanction constitutes punishment need not be determined from the defendant's perspective since even remedial sanctions carry the sting of punishment." *Halper*, 490 U.S. at 447, n. 7 [109 S.Ct. at 1901, n. 7]. Indeed, any deterrent effect a driver's license revocation may have upon the impaired driver is merely incidental to the overriding purpose of protecting the public's safety. By our decision, we join with the majority of states which have considered this issue and held that a DWI conviction after a defendant has had his or her driver's license revoked does not violate the Double Jeopardy Clause.

*North Carolina v. Oliver, supra*, 470 S.E.2d at 21.

·Four years later the Court faced the task of determining whether a Montana tax on illegal drugs might be characterized as punishment, a question the Court explicitly stated was different from that in *Halper.* *Department of Revenue of Montana v. Kurth Ranch,* 511 U.S. 767, 776, 114 S.Ct. 1937, 1944, 128 L.Ed.2d 767 (1994). While the Court found both the "high rate" and the "obvious deterrent purpose" of the tax indicative of a penalty, it ultimately concluded that its characterization of the tax as punitive followed primarily from the fact that the tax was "conditioned on the commission of a crime." *Id.* at 780–83, 114 S.Ct. at 1946–48.

Finally, just this year, the Court again set out to determine whether a particular governmental action constituted punishment for purposes of double jeopardy. This time, however, the action in question was not a civil sanction or a tax, but a civil forfeiture— a difference the Court found central to its analysis. *United States v. Ursery,* — U.S. —, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). This, because civil forfeitures, unlike civil penalties which serve to compensate the government or taxes which primarily serve to raise revenue, are designed to confiscate the instruments of an illegality. *Id.* at —, 116 S.Ct. at 2145. In order to confiscate these instruments the action is brought *in rem,* not *in personam* or, in other words, against the property, not the person. *Id.* at —, 116 S.Ct. at 2140. After noting the character of a civil forfeiture action as *in rem,* the Court undertook a two-part analysis so as to decipher the nature of that action as civil or criminal:

> First, we ask whether Congress intended [the] proceedings ... to be criminal or civil. Second, we turn to consider whether te proceedings are so punitive in fact as to "persuade us that the forfeiture proceeding[s] may not legitimately be viewed as civil in nature." *Id.* at —, 116 S.Ct. at 2147, *citing United States v. One Assort-*

*ment of 89 Firearms,* 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984).

The Court's contemplation of Congress' intent, however, did not involve a study of legislative history. Rather, because "actions *in rem* have traditionally been viewed as civil proceedings," the Court allowed for the presumption that Congress intended them to be that way—a presumption that can only be overcome by the "clearest proof" that the forfeiture proceeding is "so punitive in form and effect as to render [it] criminal ..." *Id.* at —, 116 S.Ct. at 2148, *citing 89 Firearms, supra,* at 365, 104 S.Ct. at 1106, *quoting United States v. Ward,* 448 U.S. 242, 249, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980).

It is within the context of this jurisprudence that we must determine whether appellant's license revocation was intended to be a criminal punishment for double jeopardy purposes. Although none of these cases provide an exact blue-print by which to answer that question, they together set out a basic framework by which to resolve that issue. In short, in order to ascertain whether appellant's license revocation was primarily a means of keeping him off the road or, instead, punishment for the crime of driving while intoxicated, we must look first to the legislature's intent in passing the statute and then, if that intent seems even in part to serve remedial goals, we must ask whether the effect is so severe that it renders the statute punitive regardless of the legislature's intent otherwise. *See United States v. Ursery,* — U.S. —, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996).[1]

As to the first question, we can surely turn to the plain language of the statute as well as to legislative history in order to answer it. Notably, only those who have been arrested or convicted of driving while intoxicated come under the purview of art. 6687b–1, the statute at issue in this case. But the fact that a statute only applies to those who have committed a crime, although pivotal to the Supreme Court's analysis in *Kurth Ranch,*

---

**1.** The action in this case, although most like the forfeiture in *Ursery,* is not *in rem.* After all, and unlike the forfeiture in *Ursery* in which the government sued the property, the title of the cause here is *Tharp v. State.* Because of this critical difference, I would hesitate to indulge the presumption in *Ursery* that the legislature intended the given statute to be non-punitive, or civil, in nature and would, instead, turn to more traditional indicators of legislative intent to determine that intent.

was found "insufficient to render the statute punitive" in the more recent *Ursery. Kurth Ranch* at 780–83, 114 S.Ct. at 1946–48; *Ursery* at ——, 116 S.Ct. at 2149. Moreover, unlike *Halper*, where the government imposed an excessive civil sanction, and *Kurth Ranch*, where the government levied an exorbitant tax, this case in no way involves inordinate government action. Instead, art. 6687b–1 merely mandates a license revocation of 60 to 180 days, depending on the driving record of the accused, and a $100 fee. On its surface, then, the statute appears to address the remedial goal of removing drunk drivers from the road and, additionally, the legislative history indicates that this is at least partly what was intended. A few excerpts from the legislative history illustrate the point.

> And again, I want to just see what it is that we're trying to do. We are trying to get drunk drivers off the road.

Rep. Wolens, Second Reading of SB1, May 25, 1993.

> I want to make sure that this piece of legislation is an effective tool in removing the drunk driver off the road.

Rep. Campbell, Second Reading of SB1, May 25, 1993.

> We need to take drunk drivers off the road.

Rep. Denver, Second Reading of SB1, May 25, 1993.

Although the legislative history reflects that the legislature meant not only to take drunk drivers off the road but also to deter those who might otherwise drink and drive, the Supreme Court has long held that deterrence "may serve civil as well as criminal goals." *Ursery* at ——, 116 S.Ct. at 2149.

After looking at both the legislative history and the plain language of art. 6687b–1, then, I feel confident that the legislature intended the statute to be, at least in part, a remedial measure. I am equally confident, for some of the very same reasons, that the effect of the statute does not render it punitive. Again, and as the majority states, the statutory provisions allowing for a two to six month license revocation and a $100 fee do not exceed what is reasonably necessary to keep drunk drivers off the road.

For these reasons, I concur with the majority.

