# PD-0313&0314-15

PD-0313-15 & PD-0314-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/8/2015 2:09:29 PM
Accepted 4/15/2015 11:40:36 AM
ABEL ACOSTA
CLERK

## IN THE COURT
## OF CRIMINAL APPEALS OF TEXAS

| | | |
|---|---|---|
| **THE STATE OF TEXAS,** | § | |
| *APPELLANT* | § | |
| | § | |
| **V.** | § | **NOS. PD-0313-15** |
| | § | **& PD-0314-15** |
| | § | |
| **WALTER CHIDYAUSIKU,** | § | |
| *APPELLEE* | § | |


§ § §

## STATE'S PETITION FOR DISCRETIONARY REVIEW

§ § §

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR, Assistant
Criminal District Attorney
Chief, Post-Conviction

TANYA S. DOHONEY
Assistant Criminal District Attorney
Tim Curry Criminal Justice Center
401 W. Belknap
Fort Worth, Texas 76196-0201
(817) 884-1687 FAX (817) 884-1672
State Bar No. 02760900
ccaappellatealerts@tarrantcountytx.gov

LISA C. MCMINN,
State Prosecuting Attorney

FILED IN
COURT OF CRIMINAL APPEALS

April 15, 2015

ABEL ACOSTA, CLERK

## ORAL ARGUMENT IS REQUESTED

## IDENTITY OF THE PARTIES AND COUNSEL

The Hon. Sharen Wilson, Tarrant County Criminal District Attorney, represents the State of Texas in this appeal. Additionally, representing the State on appeal is the Hon. Tanya S. Dohoney, Assistant Criminal District Attorney and Hon. Debra Windsor, Post-Conviction Chief. At trial, the Hon. Dawn Ferguson, Hon. Brock Groom, and the Hon. Mark Thielman represented the prosecution. The State's attorneys' address is Office of the Criminal District Attorney of Tarrant County, Tim Curry Criminal Justice Center, 401 W. Belknap, Fort Worth, Texas 76196-0201.

The Hon. Lisa C. McMinn is the State's Prosecuting Attorney. Mail for the Office of the State Prosecuting Attorney, located in the Price Daniel Sr. Building, may be sent to P.O. Box 13046, Austin, Texas, 78711.

Appellee, Defendant below, is Walter Tendai Chidyausiku. Hon. Wes Ball, 4025 Woodland Park Boulevard, Suite 100, Arlington, Texas, 76013, represented Appellee at trial and now on appeal.

The State tried Appellee's cases in the Criminal District Court No. 4 of Tarrant County, Texas, also located in the Tim Curry Criminal Justice Center. The Hon. Mike Thomas presided over the cases.

# SUBJECT INDEX

SUBJECT INDEX ........................................................................... iii

INDEX OF AUTHORITIES ................................................................v

STATEMENT REGARDING ORAL ARGUMENT ........................................1

STATEMENT OF THE CASE ................................................................2

STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE .............2

STATEMENT OF FACTS ................................................................3

QUESTIONS PRESENTED FOR REVIEW....................................................4

FIRST QUESTION FOR REVIEW .........................................................4

> Does a warrantless, nonconsensual blood draw
> conducted pursuant to TEX. TRANSP. CODE
> §724.012(b) violate the Fourth Amendment?
> (2RR; 3RR at 4–6)

SECOND QUESTION FOR REVIEW ........................................................4

> Are Fourth Amendment warrant-preference
> exceptions the sole measure of Fourth Amendment
> reasonableness in warrantless scenarios?
> (2RR; 3RR at 4–6)

THIRD QUESTION FOR REVIEW..........................................................4

> Do exclusionary rule principles mandate
> suppression of blood evidence seized via a
> warrantless, nonconsensual, valid-at-the-time
> mandatory blood draw?
> (2RR; 3RR at 4–6)

ARGUMENT AND AUTHORITIES..........................................................4

I. Valid, compelled statutory blood draw ................................................6

    *A.* *Codification of Fourth Amendment principles*............................6

    *B.* *Special-needs framework adds to the reasonableness calculation* ..................................................................................8

    C. Erroneous Consideration of the "Less Intrusive Means" Test ...............................................................................................9

II. Implied-Consent Draws Are Reasonable ..........................................10

III. Exclusionary rule inapplicable and not invoked...............................12

CONCLUSION AND PRAYER....................................................................15

CERTIFICATE OF COMPLIANCE..............................................................16

CERTIFICATE OF SERVICE......................................................................16

COURT OF APPEALS' OPINION ...............................................APPENDIX

iv

# INDEX OF AUTHORITIES

## Cases

*Breithaupt v. Abram*,
   352 U.S. 432 (1957) ........................................................................ 12

*Davis v. United States*,
   ___ U.S. ___, 131 S. Ct. 2419 (2011) ............................................ 13

*Douds v. State*,
   434 S.W.3d 842 (Tex. App.—Houston [14th Dist.] 2014, pet. granted)
   ................................................................................................... 5, 6

*Heien v. North Carolina*,
   135 S.Ct. 530 (2014) ................................................................. 14, 15

*Hulit v. State*,
   982 S.W.2d 431 (Tex. Crim. App. 1998) ................................... 10, 11

*Illinois v. Krull,*
   480 U.S. 342 (1987) ........................................................................ 13

*Maryland v. King*,
   569 U.S. ___, 133 S.Ct. 1958 (2013) .............................................. 11

*McGee v. State*,
   105 S.W.3d 609 (Tex. Crim. App. 2003) .......................................... 11

*Michigan Dept. of State Police v. Sitz*,
   496 U.S. 444 (1990) ........................................................................ 11

*Michigan v. DeFillippo*,
   443 U.S. 31 (1979) .......................................................................... 14

*Miles v. State*,
   241 S.W.3d 28 (Tex. Crim. App. 2007) .............................................. 6

*Missouri v. McNeely*,
569 U.S. \_\_\_, 133 S.Ct. 1552 (2013).........................................*passim*

*Segundo v. State*,
270 S.W.3d 79 (Tex. Crim. App. 2008),
*cert. denied*, 558 U.S. 828 (2009) .....................................................11

*Skinner v. Railway Labor Executives' Ass'n*,
489 U.S. 602 (1989) ......................................................................8, 9

*State v. Villarreal*,
PD-0306-14, 2014 WL 6734178 (Tex. Crim. App. 2014)...........*passim*

*Tharp v. State*,
935 S.W.2d 157 (Tex. Crim. App. 1996) .............................................9

*Vernonia School Dist. 47J v. Acton*,
515 U.S. 646 (1995) .......................................................................10

*Weems v. State*,
434 S.W.3d 655 (Tex. App.—San Antonio 2014, pet. granted) ......5, 6

*Welsh v. Wisconsin*,
466 U.S. 740 (1984) .........................................................................7

## **Statutes**

TEX. CODE CRIM. PROC. art. 14.04.......................................................7

TEX. CODE CRIM. PROC. art. 18.16.......................................................6

TEX. CODE CRIM. PROC. art. 38.23..................................................13, 14

TEX. PENAL CODE §49.04 ...................................................................6

TEX. PENAL CODE §49.07 ...................................................................2

TEX. PENAL CODE §49.08 ...................................................................2

TEX. PENAL CODE §1.07(a)(30) ................................................................ 13

TEX. TRANSP. CODE §524.012(b)................................................................ 9

TEX. TRANSP. CODE §724.012(b)......................................................*passim*

U.S. CONST. amend. IV ..................................................................*passim*

**Rules**

TEX. R. APP. P. 66.3 ............................................................................... 5

TEX. R. APP. P. 9.4 ............................................................................... 16

# IN THE COURT
# OF CRIMINAL APPEALS OF TEXAS

| THE STATE OF TEXAS, | § | |
| *APPELLANT* | § | |
| | § | |
| V. | § | NOS.  PD-0313-15 |
| | § | & PD-0314-15 |
| WALTER CHIDYAUSIKU, | § | |
| *APPELLEE* | § | |

## STATE'S PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE JUDGES OF
THE COURT OF CRIMINAL APPEALS:

Comes now the State of Texas, by and through her Tarrant County Criminal District Attorney, and respectfully urges this Court to grant discretionary review of these causes in accordance with the rules of appellate procedure.

## STATEMENT REGARDING ORAL ARGUMENT

The reasonableness of statutory mandatory blood draws merits argument.  Likewise, argument should be granted to discuss the inapplicability of the exclusionary rule to cases where, at the time of the seizure, the officer's conduct conformed to ubiquitous, nationally-recognized criteria that did not violate constitutional protections.

1

## STATEMENT OF THE CASE

Appellant premised a pretrial suppression claim on the Supreme Court's decision in *Missouri v. McNeely*, 569 U.S. ___, 133 S.Ct. 1552 (2013). (2RR). The trial judge rejected the defense argument attacking the validity of blood seized pursuant to the Texas implied-consent statute. (2RR; 3RR at 4–6). Appellant pled guilty to intoxication assault and intoxication manslaughter, then asked a jury to assess punishment. (4RR at 10-12; 5RR; 6RR). The jury sentenced Appellant to penitentiary time. (1CR at 170,196–96 [1264242R]; 1CR at 177–79 [1264243R]; 6RR at 68). TEX. PENAL CODE §§49.07, 49.08; TEX. TRANSP. CODE §724.012(b).

## STATEMENT OF THE PROCEDURAL HISTORY OF THE CASE

The Fort Worth Court of Appeals reversed the trial court in a published opinion authored by Justice Lee Ann Dauphinot. Justice Lee Gabriel concurred, with Chief Justice Terri Livingston joining that opinion. *Chidyausiku v. State*, 02-14-00078-CR, 2015 WL 737391 (Tex. App.—Fort Worth Feb. 19, 2015, no. pet. h.). Rehearing was not sought. The State timely files this petition, following one extension.

## STATEMENT OF FACTS

Appellant was convicted of intoxication assault and intoxication manslaughter after he sped, ran a stop sign, and plowed into a mother driving her ten-year-old son to football practice. (4RR at 23–57; 5RR at 15–72,95–109,138–54,187–190). TEX. PENAL CODE §§49.07, 49.08. The woman suffered serious injuries requiring long-term medical intervention and hospitalization; worse, her young son died. (4RR at 27–33; 5RR at 61,78,155,172). Arlington Police officers seized Appellant's blood pursuant to the mandatory blood draw provisions contained in Texas' implied-consent law; his BAC measured 0.12. TEX. TRANSP. CODE §724.012(b). (5RR at 6–8,67–77). Appellant primarily relied on the *McNeely* decision to complain of the trial court's pretrial denial of his motion to suppress. *Missouri v. McNeely*, 569 U.S. ___, 133 S.Ct. 1552 (2013). (2RR). Appellant also complained about the status of the person who conducted the hospital-based blood draw, an issue the lower court did not reach.

## QUESTIONS PRESENTED FOR REVIEW

### FIRST QUESTION FOR REVIEW

**Does a warrantless, nonconsensual blood draw conducted pursuant to TEX. TRANSP. CODE §724.012(b) violate the Fourth Amendment?**
**(2RR; 3RR at 4–6)**

### SECOND QUESTION FOR REVIEW

**Are Fourth Amendment warrant-preference exceptions the sole measure of Fourth Amendment reasonableness in warrantless scenarios?**
**(2RR; 3RR at 4–6)**

### THIRD QUESTION FOR REVIEW

**Do exclusionary rule principles mandate suppression of blood evidence seized via a warrantless, nonconsensual, valid-at-the-time mandatory blood draw?**
**(2RR; 3RR at 4–6)**

### ARGUMENT AND AUTHORITIES

This Court is in the midst of deciding the issues presented herein. Whilst a November 2014 decision addressed the merits of the Fourth Amendment issue in one of the several *McNeely*-related cases pending before this Court at that time, the case is in flux since the Court recently granted rehearing. *State v. Villarreal*, PD-0306-14, 2014 WL 6734178

4

(Tex. Crim. App. 2014) (reh'g granted Feb. 25, 2015). Per the Court's docket, *Villarreal* was submitted again on March 18, 2015, the same day argument was heard in another *McNeely* case. *See Douds v. State, 434 S.W.3d 842* (Tex. App.—Houston [14th Dist.] 2014, pet. granted Sep. 17, 2014).

The State's petition focuses on two aspects of any *McNeely*-related consequences: the validity of a statutorily compelled draw and the invalidity of the exclusionary rule. Note that *Villarreal* only went to the merits of the mandatory-draw issue, not addressing the applicability of the exclusionary rule. *Villarreal*, 2014 WL 6734178. However, the lower courts in *Weems* and *Douds* addressed the exclusionary rule's applicability. *Weems v. State, 434 S.W.3d 655, 666–67* (Tex. App.—San Antonio 2014, pet. granted); *Douds, 434 S.W.3d at 861*. In other words, this Court has already granted review on the issues presented herein.

Review should be granted because this case involves important questions of law that have not been finally addressed by this Court, matters in conflict in the interim appellate courts, and the misapplication of a Supreme Court decision that does not undermine the validity of the country's implied-consent statutes. TEX. R. APP. P. 66.3(a)(b)(c)(d)(f).

## I.  Valid, compelled statutory blood draw

The State's appellate stance is in lockstep with that of prosecutors from other counties across the State who have already had cases granted for review on a *McNeely*-related issue.  Hence, the State respectfully asks this Court to dispose of the instant case in a manner consistent with the petitions in *Villarreal*, *Smith*, *McGruder*, *Douds*, *Weems*, *Holidy*, and *Reeder*.  Here, the officer reasonably relied on an existing, ubiquitous statute to obtain a compelled blood draw.  The seizure occurred when the officer—at the time of the offense—possessed probable cause that Appellant's impaired and intoxicated conduct constituted felony DWI. TEX. PENAL CODE §§49.04, 49.09; TEX. TRANSP. CODE §724.012(b).

In addition, the State differs with *Villarreal's* original-submission decision and further asserts that several important arguments should be considered on the merits.

### A.  Codification of Fourth Amendment principles

*Villarreal* failed to consider that the implied-consent statute codified Fourth Amendment principles.  For instance, this Court has previously recognized a statutory codification of the exigency exception.  *See Miles v. State*, 241 S.W.3d 28, 39–40 & n.54 (Tex. Crim. App. 2007) (*citing* TEX. CODE CRIM. PROC. art. 18.16).  *McNeely* recognized that every case

6

involving the dissipation of alcohol included some exigency.  *McNeely*, 133 S.Ct. at 1561, 1568.  This ever-present exigency must be considered when assaying the reasonableness of statutory draws.

Combine the static alcohol-evaporation exigency consideration with the Legislature's clear codification of the gravity-of-the-offense exigency. The implied-consent statute extinguished a defendant's right to refuse where an officer possesses probable cause to believe that certain enumerated, egregious circumstances exist.  TEX. TRANSP. CODE §724.012(b).  Defendants only lose their refusal right under carefully circumscribed scenarios involving felonious intoxication-related offenses and/or resultant injuries necessitating hospitalization.  *Id.*

This statutory limitation amounts to a codification of an additional recognized exigency unrelated to blood-alcohol dissipation.  *Welsh v. Wisconsin* held that the Fourth Amendment authorizes common-sense consideration of the underlying offense's gravity when weighing the existence of an exigency.  *Welsh v. Wisconsin*, 466 U.S. 740, 751–52 (1984) (exigency calculations include consideration of a crime's severity). Consideration of a crime's gravity is the essence of reasonableness because the state's interest is greater in a more serious case.  *Cf.* TEX.

7

CODE CRIM. PROC. art. 14.04 (authorizing warrantless arrests for felonies where an officer did not observe the offense).

Of course, it almost goes without saying that Texas' implied-consent legislation codified Fourth Amendment probable cause requirements. U.S. CONST. amend. IV. Predicate elements of the implied consent statute codify this well-known quantum-of-evidence as a requirement for a compelled search. TEX. TRANSP. CODE §724.012(b). Probable cause, along with the exigencies based upon the gravity-of-the-crime and the dissipation-of-alcohol, create a framework that provides a neutral set of guidelines authorizing a narrowly defined seizure from an already-in-custody arrestee. These provisions embrace the essence of Fourth Amendment reasonableness.

## B. Special-needs framework adds to the reasonableness calculation

The now-withdrawn *Villarreal* decision rejected application of the Supreme Court's special needs doctrine to the mandatory blood draw framework. *Villarreal*, 2014 WL 6734178, at \*14–15; *see Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989). However, the Court did not consider that blood drawn pursuant to Chapter 724's mandate also implicates administrative license revocation [ALR] procedures, a separate regulatory process that focuses on protecting the traveling public

8

by removing offenders from the road. *See* T<small>EX</small>. T<small>RANSP</small>. C<small>ODE</small> §524.012(b)(1) (mandating license suspension based upon BAC).

"The primary purpose of the administrative license suspension statute is not to deter the licensee or to seek retribution, but to protect the public from the carnage on the public roads of Texas caused by drunk drivers." *Tharp v. State, 935 S.W.2d 157, 159 (Tex. Crim. App. 1996)*. Such regulation focuses on the government's strong interest in removing intoxicated drivers from the road, just as railroad regulation in *Skinner* sought to increase railway safety by detecting intoxicated employees. *Compare Skinner, 489 U.S. at 620–21* with *Tharp, 935 S.W.2d at 159*.

Special needs' principles recognize the statute's provision of a neutral, detached vehicle for protecting citizens from impaired drivers and defendants from unfettered discretion. The special-needs exception constitutes another factor to consider in a non-dualistic analysis that renders Texas' compelled-draw framework reasonable.

### C.   Erroneous consideration of the "Less Intrusive Means" test

The original *Villarreal* decision considered the ready availability of warrants when rejecting the validity of Texas' mandatory draw statute. *Villarreal*, 2014 WL 6734178, at *18 (finding no compelling need to uphold warrantless, nonconsensual blood searches where warrants are "often

9

readily available"). However, factors such as electronic warrants and the availability of a magistrate shift the focus away from an officer's conduct and, instead, weigh considerations of alternative means. *See McNeely, 133 S.Ct. at 1561–63*.

The Supreme Court often rejects arguments applying less-intrusive-alternative-practices attacks in Fourth Amendment cases. *Vernonia School Dist. 47J v. Acton, 515 U.S. 646, 663–64 (1995)* (upholding warrantless, random urine screening of athletes and rejecting an argument for drug testing based upon suspicion of drug use); *Skinner, 489 U.S. at 629* n.9 (upholding random, suspicionless drug screening of railway employees following safety breaches and rejecting arguments voicing less drastic and equally effective means). One footnote in *Skinner* flatly rejects the propriety of considering less-drastic alternatives in scenarios that include warrantless and even suspicionless seizures for toxicological testing, similar to Appellant's facts. *Id.* *Villarreal* mistakenly applied this discounted, *post-hoc* consideration on original submission.

## II. Implied-consent draws are reasonable

Reasonableness has always been the linchpin of the Fourth Amendment, venerated in the provision's plain language. U.S. CONST. amend. IV; *Hulit v. State, 982 S.W.2d 431, 435–36, 438 (Tex. Crim. App.*

1998).  Discernment of what is "reasonable" requires courts to consider the balance between an individual's privacy and the legitimate governmental interests, especially when public safety is of utmost concern.  *See Maryland v. King,* 569 U.S. ___, 133 S.Ct. 1958, 1979 (2013); *Michigan Dept. of State Police v. Sitz,* 496 U.S. 444, 455 (1990); *Segundo v. State,* 270 S.W.3d 79 (Tex. Crim. App. 2008), *cert. denied,* 558 U.S. 828 (2009). *Villarreal* viewed the choice between applying a Fourth Amendment exception and consideration of a reasonableness balancing approach as mutually exclusive analytical constructs.  The State respectfully believes that this black-white consideration of these two concepts is mistaken, especially in light of the fact that this Court has conducted the reasonableness balancing approach to similar issues.  *See Segundo,* 270 S.W.3d at 96–99; *McGee v. State,* 105 S.W.3d 609 (Tex. Crim. App. 2003); *Hulit,* 982 S.W.2d at 434 n.1, 436.

Years ago, the Supreme Court recognized that a framework requiring a driver's consent was anything but nonsensical.  The *Breithaupt* court pointed to then recently adopted implied-consent provisions and wrote:

> It might be a fair assumption that a driver on the highways in obedience to a policy of the State, would consent to have a blood test made as part of a sensible and civilized system protecting himself as well as other citizens not only from the hazards of the road due to drunken driving, but also from some use of dubious lay testimony.

11

*Breithaupt v. Abram*, 352 U.S. 432, 435 n.2 (1957). The State contends that compelled draws under implied-consent provisions are inherently reasonable when all side's needs are weighed. Indeed, Fourth Amendment reasonableness underpins the statute. The well-known exceptions—as argued in the myriad cases already before this Court—considered individually and in concert with each other, alongside a balancing of the competing interests, all support the continued viability of Texas' implied-consent framework.

## III.    Exclusionary rule inapplicable and not invoked

Statutory mandatory blood-draws are reasonable. *But see Villarreal, 2014 WL 6734178*(opinion on original submission; under re-submission). When the ink dries on *Villarreal* and future *McNeely*-related decisions and if those cases are adverse to the State on the merits, the rules requiring evidence exclusion should not apply to mandatory blood-draw scenarios that occurred prior to the Supreme Court's April 2012 pronouncement.

Federally, the good-faith exception to the Fourth Amendment's exclusionary rule applies when law enforcement, at the time of the search, acted with objective reasonableness by relying on (1) a statute, later declared unconstitutional, or (2) binding judicial precedent, subsequently

overruled. *Illinois v. Krull, 480 U.S. 340, 349–57 (1987)* (statutes); *Davis v. United States, ___ U.S. ___, 131 S. Ct. 2419, 2428–34 (2011)* (caselaw).

Under state law, the Texas exclusionary rule is not invoked because—at the time of the offense—no violation occurred. The State recognizes that article 38.23(b)—Texas' limited good faith exception—requires a warrant. TEX. CODE CRIM. PROC. §38.23(b). Notwithstanding, invocation of exclusionary rule principles relies on article 38.23(a). That subsection's plain language requires a violation for exclusion to be triggered. When Appellant's blood was drawn, no one credibly questioned the validity of the officer's statutory authority. In other words, at the time of the seizure, the officer followed then-existing law. *See* TEX. CODE CRIM. PROC. art. 38.23(a); *see also* TEX. PENAL CODE §1.07(a)(30) (defining "law" as meaning the state and federal constitution and statutes, in addition to the written opinions of a court of record); *see also Davis, 131 S.Ct. at 2427–28* ("obtained" applies to unlawfulness at the time of the seizure; exclusion not triggered in an absence of police culpability). Simply put, these circumstances do not invoke exclusion.

The Supreme Court mentioned, in *dictum*, the application of the exclusionary rule versus Fourth Amendment violations in a non-blood-draw scenario decided recently. In *Heien*, the Court weighed the validity of an

13

investigatory stop where the officer misunderstood the traffic code provision he relied on to support the stop. *See Heien v. North Carolina,* 135 S.Ct. 530, 538–39 (2014). The Supreme Court considered the reasonableness of the officer's mistake that lead to the stop and arrest when considering remedies. In so doing, the Court pointed out the myriad decisions finding exclusionary-rule invocation inappropriate where the officer's conduct— valid at the time—was later declared unconstitutional. *Id.* With only one justice dissenting, the Supreme Court's decision pondered the exclusionary rule's limits which had been briefly considered in *Michigan v. DeFillippo. Heien,* 135 S.Ct at 538–39; *see generally Michigan v. DeFillippo,* 443 U.S. 31, 3–9 (1979) (suggesting that exclusion might have been appropriate had the provision been "grossly and flagrantly unconstitutional").

Although the *Heien* discussion is merely *dicta*, it reiterates the importance of focusing on the fact that the instant officer's conduct—at the time of the arrest—complied with mandatory, settled law. *Heien,* 135 S.Ct. at 538–39. *McNeely* and subsequent caselaw questioning implied-consent blood draws came later. Since no violation occurred at the time of the Appellant's 2011 blood draw, Texas' exclusionary provision does not apply. TEX. CODE CRIM. PROC. art. 38.23(a). And since any legal error by the

14

officer was reasonable, Fourth Amendment cases do not mandate the remedy of exclusion.   *See Heien*, 135 S.Ct. at 539.

## CONCLUSION AND PRAYER

Review should be granted and the decision of the Court of Appeals should be reversed, remanding the causes to address the remaining non-*McNeely* claim.   Ultimately, these convictions should be upheld.

Respectfully submitted,

SHAREN WILSON
Criminal District Attorney
Tarrant County, Texas

DEBRA WINDSOR, Assistant
Criminal District Attorney
Chief, Post-Conviction

/s/ Tanya S. Dohoney
TANYA S. DOHONEY
Assistant Criminal District Attorney
Tim Curry Criminal Justice Center
401 W. Belknap
Fort Worth, Texas  76196-0201
(817) 884-1687
FAX (817) 884-1672
State Bar No.  02760900
ccaappellatealerts@tarrantcountytx.gov

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes.  This document also complies with the word-count limitations of TEX. R. APP. P. 9.4 (i) because it contains less than 4500 words, excluding any parts exempted by TEX. R. APP. P. 9.4(i)(1), as computed by Microsoft Word, the computer software used to prepare the document.

/s/ Tanya S. Dohoney
TANYA S. DOHONEY


## CERTIFICATE OF SERVICE

A true copy of the State's petition for discretionary review has been e-served to opposing counsel, the Hon. Wes Ball, 4025 Woodland Park Boulevard, Suite 100, Arlington, Texas, 76013, at WBnotices@ballhase.com on this, the 8th day of April 2015.

/s/ Tanya S. Dohoney
TANYA S. DOHONEY


H:\DOHONEY.D11\PDRS\031815 chidyausiku pdr post-villarreal-reh hyperlinked.docx

16

# **APPENDIX**



--- S.W.3d ----, 2015 WL 737391 (Tex.App.-Fort Worth)
**(Cite as: 2015 WL 737391 (Tex.App.-Fort Worth))**

Only the Westlaw citation is currently available.

NOTICE: THIS OPINION HAS NOT BEEN RE-LEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

OPINION

Court of Appeals of Texas,
Fort Worth.
Walter Tendai **Chidyausiku**, Appellant
v.
The State of Texas, State

NO. 02–14–00077–CR, NO. 02–14–00078–CR
DELIVERED: February 19, 2015

**Background:** After his motion to suppress evidence was denied, defendant pled guilty in the Criminal District Court No. 4, Tarrant County, Michael R. Thomas, J., to intoxication assault and intoxication manslaughter. Defendant appealed.

**Holdings:** The Court of Appeals, Lee Ann Dauphinot, J., held that:
(1) natural dissipation of alcohol in defendant's bloodstream following a fatal car accident did not constitute an exigent circumstance that justified the warrantless blood draw, and
(2) error in denying defendant's motion to suppress was not harmless.

Reversed and remanded.

Gabriel, J., filed concurring opinion in which Livingston, C.J., joined.

West Headnotes

**[1] Criminal Law 110 ⇨1139**

110 Criminal Law

110XXIV Review
110XXIV(L) Scope of Review in General
110XXIV(L)13 Review De Novo
110k1139 k. In general. Most Cited Cases

**Criminal Law 110 ⇨1158.12**

110 Criminal Law
110XXIV Review
110XXIV(O) Questions of Fact and Findings
110k1158.8 Evidence
110k1158.12 k. Evidence wrongfully obtained. Most Cited Cases

The appellate court reviews a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review, giving almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but reviewing de novo application-of-law-to-fact questions that do not turn on credibility and demeanor.

**[2] Automobiles 48A ⇨414**

48A Automobiles
48AIX Evidence of Sobriety Tests
48Ak414 k. Right to take sample or conduct test; initiating procedure. Most Cited Cases

The natural dissipation of alcohol in defendant's bloodstream following a fatal car accident did not constitute an exigent circumstance that justified the warrantless blood draw used to determine defendant's blood alcohol content, especially in light of the local protocol and procedure for obtaining search warrants efficiently and without undue delay. U.S. Const. Amend. 4.

**[3] Searches And Seizures 349 ⇨24**

349 Searches and Seizures
349I In General
349k24 k. Necessity of and preference for warrant, and exceptions in general. Most Cited

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.W.3d ----, 2015 WL 737391 (Tex.App.-Fort Worth)
**(Cite as: 2015 WL 737391 (Tex.App.-Fort Worth))**

Cases

Searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable, subject only to a few specifically established and well delineated exceptions. U.S. Const. Amend. 4.

**[4] Automobiles 48A ⌖414**

48A Automobiles
    48AIX Evidence of Sobriety Tests
        48Ak414 k. Right to take sample or conduct test; initiating procedure. Most Cited Cases

A nonconsensual search of a driving while intoxicated (DWI) suspect's blood conducted pursuant to the mandatory-blood-draw and implied-consent provisions in the Transportation Code, when undertaken in the absence of a warrant or any applicable exception to the warrant requirement, violates the right of protection against unreasonable searches and seizures. U.S. Const. Amend. 4.

**[5] Searches And Seizures 349 ⌖24**

349 Searches and Seizures
    349I In General
        349k24 k. Necessity of and preference for warrant, and exceptions in general. Most Cited Cases

To be constitutionally permissible, a warrantless search must fall within one of the well-accepted exceptions to the warrant requirement. U.S. Const. Amend. 4.

**[6] Automobiles 48A ⌖414**

48A Automobiles
    48AIX Evidence of Sobriety Tests
        48Ak414 k. Right to take sample or conduct test; initiating procedure. Most Cited Cases

The natural dissipation of alcohol in the driver's bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant. U.S. Const. Amend. 4.

**[7] Criminal Law 110 ⌖1162**

110 Criminal Law
    110XXIV Review
        110XXIV(Q) Harmless and Reversible Error
            110k1162 k. Prejudice to rights of party as ground of review. Most Cited Cases

If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

**[8] Criminal Law 110 ⌖1169.1(8)**

110 Criminal Law
    110XXIV Review
        110XXIV(Q) Harmless and Reversible Error
            110k1169 Admission of Evidence
                110k1169.1 In General
                    110k1169.1(8) k. Evidence wrongfully obtained. Most Cited Cases

Error in denying defendant's motion to suppress results of blood test that was performed in violation of his right of protection against unreasonable searches and seizures was not harmless, in prosecution for intoxication assault and intoxication manslaughter; Court of Appeals could not say that the denial of defendant's motion to suppress the results of the blood test did not contribute to his decision to enter a guilty plea. U.S. Const. Amend. 4.

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY, TRIAL COURT NOS. 1264242R, 1264243R, MICHAEL R. THOMAS, TRIAL COURT JUDGEWes Ball, Arlington, TX, for Appellant.

Sharen Wilson, Criminal District Attorney; Debra A. Windsor, Chief of the Post-Conviction Division; Tanya S. Dohoney, Dawn Ferguson, Assistant Criminal District Attorneys for Tarrant County, Fort Worth, TX, for State.

PANEL: LIVINGSTON, C.J.; DAUPHINOT and

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.W.3d ----, 2015 WL 737391 (Tex.App.-Fort Worth)
**(Cite as: 2015 WL 737391 (Tex.App.-Fort Worth))**

GABRIEL, JJ.

### OPINION

LEE ANN DAUPHINOT, JUSTICE

**\*1** After the denial of his motions to suppress, Appellant Walter Tendai Chidyausiku pled guilty to intoxication assault and intoxication manslaughter, charged in separate indictments, reserving his right to appeal the denial of his motions to suppress. He pled "not true" to the deadly-weapon allegation in each case. A jury convicted him as instructed to do by the trial court, found the deadly-weapon allegation in each case true, and assessed his punishment at three years' confinement for his conviction of intoxication assault and ten years' confinement for his conviction of intoxication manslaughter. The trial court sentenced him accordingly, with the sentences to run concurrently.<sup>FN1</sup>

> FN1. *See* Tex.Code Crim. Proc. art. 42.08(a) (West Supp. 2014).

In two points, Appellant challenges the trial court's denial of his motions to suppress the evidence obtained from the warrantless, mandatory, and involuntary blood draw. Because the trial court reversibly erred by denying his motion to suppress in each case,<sup>FN2</sup> we reverse the trial court's judgments and remand both causes to the trial court for a new trial or other proceedings consistent with this opinion.

> FN2. *See State v. Villarreal,* No. PD–0306–14, ––S.W.3d ––, ––, 2014 WL 6734178, at \*20 (Tex.Crim.App. Nov. 26, 2014) (holding that implied consent statutes, "taken by themselves, [do not] form a constitutionally valid alternative to the Fourth Amendment warrant requirement").

**Brief Facts**

Appellant was involved in a car wreck at a four-way stop intersection in Arlington, Texas. Appellant's automobile approached the intersection at a fast speed and then failed to stop, striking the vehicle operated by Tina R. As a result of the collision, Tina suffered severe bodily injuries causing her to be hospitalized for six weeks. Additionally, the wreck resulted in the death of Tina's ten-year-old son.

The City of Arlington Fire Department and the DWI unit of the City of Arlington Police Department responded to the wreck. Officer Brian Martin spoke with Appellant when he arrived on the scene and noticed that Appellant had been crying and was a bit emotional. Appellant admitted to having had two alcoholic drinks at a bar after work before the collision occurred. Appellant also told Officer Martin that he had been trying to rinse his mouth with mouthwash just before the collision to mask the smell of cigarette smoke, and may have even swallowed some mouthwash, because he was on his way to meet his son.

Officer Martin directed Appellant to perform field sobriety tests because Appellant showed signs of impairment such as poor balance, bloodshot and glassy eyes, and the smell of alcohol from his mouth. When asked about the specific results of the tests, Officer Martin testified that Appellant had scored six of six points on the horizontal-gaze-nystagmus test and four of eight on the walk-and-turn test, failing both, but that he had passed the final test by scoring zero on the one-leg stand.

As a result of those tests, Officer Martin placed Appellant under arrest for driving while intoxicated. Appellant was then transported to the Medical Center of Arlington (MCA), where he was asked to give a blood sample. He refused, so blood-draw technician Adam Tomlinson performed the blood draw without Appellant's consent while Officer Martin was present. Tomlinson worked for the MCA "as a side gig part time while [also] working on the ambulance [at Arlington EMS]." As an Emergency Department Tech II at MCA, some of Tomlinson's primary duties included "[s]tarting IVs, drawing blood, [inserting and removing] Foley catheters[,] ... transporting patients[,] and assisting

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

the nurses and doctors in other procedures." After the sample was collected, Officer Martin transported the blood vials to the main police station and locked them in the evidence room, where they remained refrigerated. Analyst Joyce Ho tested Appellant's blood.

**\*2** In both cases, Appellant filed a motion to suppress the blood evidence on the ground that it was seized without a warrant and without consent, under the auspices of transportation code section 724.012, authorizing mandatory blood draws, and triggering section 724.017, which lists those authorized to draw blood under the implied consent statutes.[FN3] Appellant argued in his motions to suppress that under section 724.017, a qualified technician must draw the blood, that the statute excludes emergency medical services personnel from the definition of "qualified technician," and that because Tomlinson holds an EMT paramedic license, he is included in emergency medical services personnel. Appellant also contended that the mandatory blood draw was a search, and he moved to suppress the blood evidence on the ground that the Fourth Amendment "does not permit nonconsensual blood draws in every instance," citing *Missouri v. McNeely* in his brief supporting his motion in each case.[FN4] The trial court denied the motions in both cases.

> FN3. Tex. Transp. Code Ann. § 724.012 (West 2011), § .017 (West Supp. 2014).

> FN4. ––– U.S. ––––, 133 S.Ct. 1552, 1557, 185 L.Ed.2d 696 (2013).

At trial, subject to Appellant's objections to the blood evidence, he and the State stipulated to the result of Ho's analysis showing that he had a blood-alcohol concentration of 0.12. Dr. Robert Johnson, Chief Toxicologist for the Tarrant County Medical Examiner's Office, testified concerning Appellant's 0.12 blood-alcohol concentration.

**Motion to Suppress**

[1][2]We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.[FN5] We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor.[FN6]

> FN5. *Amador v. State,* 221 S.W.3d 666, 673 (Tex.Crim.App.2007); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997).

> FN6. *Amador,* 221 S.W.3d at 673; *Estrada v. State,* 154 S.W.3d 604, 607 (Tex.Crim.App.2005); *Johnson v. State,* 68 S.W.3d 644, 652–53 (Tex.Crim.App.2002).

[3][4]It is well established that

[t]he Fourth Amendment (of the United States Constitution) proscribes all unreasonable searches and seizures, and it is a cardinal principle that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.[FN7]

The Texas Court of Criminal Appeals instructs us that

a nonconsensual search of a DWI suspect's blood conducted pursuant to the mandatory-blood-draw and implied-consent provisions in the Transportation Code, when undertaken in the absence of a warrant or any applicable exception to the warrant requirement, violates the Fourth Amendment.[FN8]

The Supreme Court of the United States has held,

Our cases have held that a warrantless search of the person is reasonable only if it falls within a recognized exception. That principle applies to

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

the type of search at issue in this case, which involved a compelled physical intrusion beneath McNeely's skin and into his veins to obtain a sample of his blood for use as evidence in a criminal investigation. Such an invasion of bodily integrity implicates an individual's most personal and deep-rooted expectations of privacy.[FN9]

> FN7. *Gonzales v. State,* 369 S.W.3d 851, 854 (Tex.Crim.App.2012) (internal quotation marks and citation omitted).
>
> FN8. *Villarreal,* ––– S.W.3d at ––––, 2014 WL 6734178, at *21.
>
> FN9. *McNeely,* 133 S.Ct. at 1558 (citations and internal quotation marks omitted).

[5][6]To be constitutionally permissible, a warrantless search must fall within one of the well-accepted exceptions to the warrant requirement.[FN10] We have found no exception to the warrant requirement that would justify the search in the cases now before this court. The only possible exigency suggested by the records is the natural dissipation of alcohol in Appellant's body. But, as the *McNeely* court held, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant.[FN11] Examining the totality of the circumstances here, we**\*3** see no basis to justify Appellant's blood draw on the ground of exigency.[FN12] The records show that the Arlington Police Department and the Arlington judiciary, in a commendable commitment to assuring Fourth Amendment protections, have established a protocol and procedure to obtain search warrants efficiently and without undue delay. In 2011 alone, 288 search warrants were procured. The records reflect that this procedure, described by Officer Martin, Sergeant Steve Chow, also of the City of Arlington Police Department, and Judge Stewart Milner, the chief municipal judge of the City of Arlington, was efficient and available twenty-four hours a day, seven days a week, holidays included. The re-

cords do not reflect any other exception to justify the search.[FN13] We further point out that this court has already rejected the State's argument that the evidence should not be excluded under article 38.23.[FN14] We therefore hold that the trial court erred by denying Appellant's motion to suppress the blood test results in each case.[FN15]

> FN10. *Id.* at 1558–59; *Villarreal,* ––– S.W.3d at ––––, 2014 WL 6734178, at *9.
>
> FN11. *McNeely,* 133 S.Ct. at 1568.
>
> FN12. *See id.*
>
> FN13. *See Villarreal,* ––– S.W.3d at ––––, 2014 WL 6734178 at *10 (rejecting implied consent, exceptions to the warrant requirement—the automobile exception, the special-needs exception, and the search-incident-to-arrest-exception, as well as the treatment of the blood draw as a seizure, not a search and employing a balancing test as justifications for mandatory blood draw).
>
> FN14. *See Burks v. State,* No. 02–13–00560–CR, –––S.W.3d ––––, ––––, 2015 WL 115964, at *3 (Tex.App.–Fort Worth Jan. 8, 2015, no pet. h.) (noting that "there is no exception to our statutory exclusionary rule for an officer's good faith reliance on a statute").
>
> FN15. *See id.* at ––––, 2015 WL 115964, at *1, *3 (reversing trial court's order denying motion to suppress in DWI-felony repetition blood-draw case).

## Harm

[7][8]Because the denial of Appellant's motions to suppress and the admission of the fruits of the unlawful search of Appellant by means of a warrantless, nonconsensual blood draw violated his Fourth Amendment constitutional rights, we perform the harm analysis mandated by rule 44.2(a) of the Rules of Appellate Procedure:

If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.[FN16]

> FN16. Tex.R.App. P. 44.2(a).

In each case, if the denial of the motion to suppress contributed in some measure to the State's leverage in the plea-bargaining process and may have contributed to Appellant's decision to relinquish his constitutional rights of trial and confrontation, we cannot conclude beyond a reasonable doubt that the error did not contribute to the conviction or punishment.[FN17] As a result, the error cannot be found harmless. We cannot say that the denial of Appellant's motion to suppress the results of the blood test did not contribute to his decision to enter a guilty plea in each case. Consequently, we cannot say that the erroneous denial of his motion to suppress did not contribute to his conviction in each case.[FN18] Because the trial court reversibly erred by denying Appellant's motion to suppress in each case, we are compelled to sustain his first point in each case. We therefore do not reach his remaining point in each case, which challenges the blood draw under section 724.017.[FN19]

> FN17. *See* *McKenna v. State,* 780 S.W.2d 797, 799–800 (Tex.Crim.App.1989); *Castleberry v. State,* 100 S.W.3d 400, 404 (Tex.App.–San Antonio 2002, no pet.); *Woodberry v. State,* 856 S.W.2d 453, 458–59 (Tex.App.–Amarillo 1993, no pet.).

> FN18. *See* *Burks,* —— S.W.3d at ——, 2015 WL 115964, at *3 (implicitly holding error harmful by reversing trial court's judgment and order denying motion to suppress in DWI-felony repetition blood draw case).

> FN19. *See* Tex.R.App. P. 47.1.

**Conclusion**

Having held that the trial court reversibly erred by denying Appellant's motions to suppress, we reverse the trial court's judgments and remand both causes to the trial court for a new trial or other proceedings consistent with this opinion.

GABRIEL, J., filed a concurring opinion in which LIVINGSTON, C.J., joins.
LEE GABRIEL, JUSTICE, concurring.

**\*4** I agree that the trial court's judgments must be reversed and remanded for further, consistent proceedings. I write separately to clarify the parameters of this court's holdings.

This case involves a mandatory blood draw under transportation code section 724.012(b)(1), which implies consent for a breath or blood sample if a suspected impaired driver is in an accident and someone other than the impaired driver "has suffered bodily injury and been transported to a hospital ... for medical treatment." Tex. Transp. Code Ann. § 724.012(b)(1)(C) (West 2011). The court of criminal appeals, in a case involving section 724.012(b)(3), recently held that "a nonconsensual search of a DWI suspect's blood conducted pursuant to the mandatory-blood-draw and implied-consent provisions in the Transportation Code, when undertaken in the absence of a warrant or any applicable exception to the warrant requirement, violates the Fourth Amendment." *State v. Villarreal,* No. PD–0306–14, —— S.W.3d ——, ——, 2014 WL 6734178, at *21 (Tex.Crim.App. Nov. 26, 2014) (5–4 opinion). Thus, the warrantless blood draw under section 724.012(b)(1) in this case violated the Fourth Amendment and must be suppressed in the absence of any exception to the warrant requirement.

I agree that there are no exceptions to the warrant requirement in this case because the record reveals (1) no exigency;[FN1] (2) that Appellant did not consent to the search; and (3) that the automobile, search-incident-to-arrest, and special-needs

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- S.W.3d ----, 2015 WL 737391 (Tex.App.-Fort Worth)
**(Cite as: 2015 WL 737391 (Tex.App.-Fort Worth))**

exceptions are inapplicable. *See id.* at —— – ——, 2014 WL 6734178, at *10–16; *Lloyd v. State,* No. 05–13–01004–CR, —— S.W.3d ——, ——, 2014 WL 7249747, at *3 (Tex.App.–Dallas Dec. 22, 2014, no pet. h.). However, the police officers at the time of the blood draw did nothing wrong by relying on a then-valid statute to compel a blood specimen without a warrant when faced with two people who were severely injured after Appellant was in a wreck with them, one of whom—a ten-year-old boy—later died. Similarly, the trial court understandably held that section 724.012(b)(1) specifically authorized the blood draw and was, in effect, an exception to the warrant requirement. Whether or not the police had a "commendable ... protocol" in place to secure a warrant as stated by the opinion, the police justifiably relied on an authorizing statute to compel the warrantless search. I recognize that there is no good-faith exception to the exclusionary rule, *see Burks v. State,* No. 02–13–00560–CR, ——S.W.3d ——, ——, 2015 WL 115964, at *3 (Tex.App.–Fort Worth Jan. 8, 2015, no pet. h.), but I believe it imperative to avoid any implication that the police officers or the trial court in this case were willfully or knowingly disregarding constitutional requirements. In any event, the State failed to prove under the totality of the circumstances that the warrantless search was nevertheless reasonable based on an established exception to the warrant requirement. *See Amador v. State,* 221 S.W.3d 666, 672–73 (Tex.Crim.App.2006) (holding once defendant establishes a search or seizure occurred without a warrant and rebuts the presumption of proper police conduct, the burden shifts to the State to prove the reasonableness of the search or seizure).

> FN1. The opinion states that the "only possible exigency suggested by the record is the natural dissipation of alcohol in Appellant's body." I disagree to the extent this statement could be construed as a holding that dissipation is the only arguable exigency in this type of case. I agree, however, that the record in this case shows no exigency sufficient to justify a warrantless search.

**\*5** Having found error, the opinion correctly proceeds to a harm analysis under rule 44.2(a). Tex.R.App. P. 44.2(a). Neither Appellant nor the State briefed whether any harm flowed from the constitutional error; thus, it is unclear whether Appellant argues that the error contributed to his decision to plead guilty, to his punishment as assessed by the jury, or both. But the court of criminal appeals has indicated that even though the blood-test results were admitted only during punishment, the harm from the trial court's denial of appellant's motion to suppress, if any, is deeply connected to Appellant's decision to plead guilty. *See Holmes v. State,* 323 S.W.3d 163, 172–73 (Tex.Crim.App.2009); *see also Sanchez v. State,* 98 S.W.3d 349, 357–58 (Tex.App.–Houston [1st Dist.] 2003, pet. ref'd). Thus, any harm arising from the trial court's denial should be looked at relative to Appellant's decision to plead guilty. *See Gentry v. State,* No. 12–13–00168–CR, 2014 WL 4215544, at *4 (Tex.App.–Tyler Aug. 27, 2014, pet. filed) (mem. op., not designated for publication) (in an appeal from DWI conviction where defendant pleaded guilty and jury assessed punishment and after concluding warrantless blood draw violated Fourth Amendment, appellate court considered "whether the trial court's admission of the blood test evidence contributed to Appellant's decision to plead 'guilty' "); *Forsyth v. State,* 438 S.W.3d 216, 225 (Tex.App.–Eastland 2014, pet. ref'd) (same holding in case where defendant pleaded guilty and trial court assessed punishment); *Jaganathan v. State,* 438 S.W.3d 823, 828–29 (Tex.App.–Houston [14th Dist.] 2014, pet. granted) (same). *But see Noriega v. State,* No. 04–13–00744–CR, 2014 WL 7339735, at *2 (Tex.App.–San Antonio Dec. 23, 2014, no pet. h.) (mem. op., not designated for publication) (concluding defendant who pleaded guilty to DWI and had jury assess punishment was not harmed by admission at punishment of blood-test results obtained without a warrant because "the jury would [not] have assigned much weight to the stat-

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

utory blood draw evidence in view of the other evidence of the extent of defendant's intoxication").

Under rule 44.2(a), we must reverse the trial court's judgments unless we can determine beyond a reasonable doubt that the error did not contribute to Appellant's decision to plead guilty. In other words, we must conclude beyond a reasonable doubt that the trial court's failure to suppress the blood-test results did not influence Appellant's decision to plead guilty. *Forsyth,* 438 S.W.3d at 225. The record shows that after the trial court announced that it was denying the motions to suppress, Appellant's counsel stated that it was Appellant's "intention ... to enter pleas of guilty" and that he specifically intended to preserve his right to appeal the trial court's suppression rulings. Counsel further stated that Appellant would "enter a plea to this now" to "not fuss about things that aren't in dispute" and would take up the "legal issue" later on appeal. I believe these statements by counsel preclude a finding that Appellant's decision to plead guilty was not influenced by the trial court's denials of his motions to suppress. *See Gentry,* 2014 WL 4215544, at \*4; *Jaganathan,* 438 S.W.3d at 829.

With these comments, I concur in the court's reversal of the trial court's judgments and remand for further, consistent proceedings.

LIVINGSTON, C.J. Joins.

Tex.App.-Fort Worth, 2015
Chidyausiku v. State
--- S.W.3d ----, 2015 WL 737391 (Tex.App.-Fort Worth)

END OF DOCUMENT

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.