

# NUMBER 13-15-00065-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

JOHN ANDREW RANKIN, Appellant,

v.

TEXAS DEPARTMENT OF PUBLIC SAFETY, Appellee.

**On appeal from the County Court at Law No. 8
of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Rodriguez**

Appellant John Andrew Rankin appeals the county court at law's affirmance of the decision of an administrative law judge (ALJ) that permitted appellee the Texas Department of Public Safety (the Department) to suspend Rankin's driver's license, based on his refusal of a breath test after he had been arrested for driving while intoxicated

(DWI). *See* TEX. TRANSP. CODE ANN. §§ 724.001–.064 (West, Westlaw through 2015 R.S.) (governing license suspension in cases where the individual arrested for DWI refuses to provide a breath specimen for testing and implying a defendant's consent to a search if arrested for DWI). By sixteen issues, which we have reorganized as five and renumbered, Rankin complains that under Texas Transportation Code Chapter 724, our implied consent law, the suspension of his driver's license for refusing to provide a breath specimen: (1) "raised a presumption of vindictiveness[,] which the Department did not rebut"; (2) violated his right to freedom of speech, as guaranteed by the First Amendment of the United States Constitution; (3) violated his right to be free from unreasonable searches under the Fourth and Fourteenth Amendments to the United States Constitution and article I, sections 9 and 19 of the Texas Constitution; (4) violated his right to be free from self-incrimination, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and article I, sections 10 and 19 of the Texas Constitution; and (5) prejudicially deprived him of his substantial rights. We affirm.

## I. BACKGROUND

### A. Rankin's Arrest

According to the transcript of the administrative hearing, an hour before midnight on July 19, 2014, McAllen Police Department Officer Luis Villarreal observed Rankin pass through an intersection without coming to a stop for a blinking red signal light. After stopping Rankin, Officer Villarreal smelled "a strong odor of an alcoholic beverage emitting from [Rankin]" and observed that Rankin exhibited slurred speech and bloodshot

2

eyes. He administered field sobriety tests to Rankin. The results of the tests led Officer Villarreal to arrest Rankin for DWI on a public road.

Rankin was taken to the police department's intoxilyzer room. He was read the statutory DWI warnings, which advised Rankin that if he refused to submit to the taking of a specimen his "license to operate a motor vehicle will be automatically suspended . . . for not less than 180 days." *See id.* § 724.015. Rankin was asked to provide a breath specimen. He refused.

## B.    The Administrative Hearing

After being served with an order of suspension, Rankin timely requested an administrative hearing to challenge the suspension of his driver's license. At the hearing, the Department's evidence consisted of Officer Villarreal's reports; Rankin presented no evidence. Counsel for the Department and counsel for Rankin presented their arguments to the ALJ. After the hearing, the ALJ authorized the suspension or the denial of Rankin's driving privileges and issued the following findings of fact:

1.   On July 19, 2014, at approximately 10:27 P.M., reasonable suspicion to stop Defendant existed, in that a Texas peace officer within his jurisdiction observed Defendant operating a motor vehicle in a public place in Texas. The officer observed Defendant disregard a red blinking light.

2.   On the same date, probable cause to arrest the Defendant existed; in that probable cause existed to believe that Defendant was operating a motor vehicle in a public place while intoxicated, because in addition to the facts in No. 1, a Texas peace officer observed the Defendant had a strong odor of alcohol, slurred speech, swaying balance and bloodshot eyes. Defendant displayed 6 of 6 clues of intoxication on the Horizontal Gaze Nystagmus evaluation, and displayed additional clues of intoxication on the Walk and Turn and One Leg Stand tasks.

3

3. Defendant was placed under arrest and was properly asked to submit a specimen of breath or blood.

4. After being requested to submit a specimen of breath or blood, Defendant refused.

5. Defendant has had one or more alcohol or drug related enforcement contacts during the ten years preceding the date of Defendant's arrest as is indicated on Defendant's driving record.

Based on its findings, the ALJ concluded that "the Department proved the issues set out in Tex. Transp. Code § 724.042 and that Defendant's license is subject to a suspension for **two years** pursuant to Tex. Transp. Code § 724.035."

## C.      Review by the County Court at Law

Rankin appealed the ALJ's decision to County Court at Law Number 8 in Hidalgo County, arguing for the reversal of the ALJ's decision based on, among other things, the Fourth Amendment to the United States Constitution as arguably expanded by the United States Supreme Court decision in *Missouri v. McNeely.*   133 S. Ct. 1552, 1556 (2013). After a hearing where the trial court heard arguments of counsel and admitted a certified copy of the transcript from the administrative hearing, the county court at law affirmed the administrative decision.   Rankin appeals from that order.

## II.  STANDARD OF REVIEW AND APPLICABLE LAW

## A.      Standard of Review

Courts reviewing an ALJ's decision on a driver's license suspension apply the substantial evidence standard.   *Mireles v. Tex. Dep't. of Pub. Safety*, 9 S.W.3d 128, 131 (Tex. 1999) (per curiam).   Under a substantial evidence review, a court may not reverse the case unless it prejudices the substantial rights of the appellant and is

4

(A)     in violation of a constitutional or statutory provision;

(B)     in excess of the agency's statutory authority;

(C)     made through unlawful procedure;

(D)     affected by other error of law;

(E)     not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole; or

(F)     arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

TEX. GOV'T CODE ANN. § 2001.174(2) (West, Westlaw through 2015 R.S.).   We further review the interpretations of constitutional provisions, as in this case, de novo.   *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 585–86 (Tex. 2013).

**B.     Applicable Law**

Section 724.011(a) of the Texas Transportation Code, the relevant implied-consent provision, provides:

> If a person is arrested for an offense arising out of acts alleged to have been committed while the person was operating a motor vehicle in a public place, or a watercraft, while intoxicated, or an offense under Section 106.041, Alcoholic Beverage Code, the person is deemed to have consented, subject to this chapter, to submit to the taking of one or more specimens of the person's breath or blood for analysis to determine the alcohol concentration or the presence in the person's body of a controlled substance, drug, dangerous drug, or other substance.

TEX. TRANSP. CODE ANN. § 724.011(a).   If a person refuses to provide the breath test, that refusal may be introduced into evidence at the person's trial.   *Id.* § 724.061.   Such a refusal may also result in the suspension of the driver's license upon a showing of the following:   (1) reasonable suspicion or probable cause existed to stop or arrest the driver; (2) probable cause existed to believe that the driver was operating a motor vehicle in a

5

public place while intoxicated; (3) the driver was placed under arrest by the officer and was requested to submit to the taking of a specimen; and (4) the driver refused to submit to the taking of a specimen on request of the officer. *Id.* § 724.042–.043 (West, Westlaw through 2015 R.S.).

Courts have held that "[i]n the public interest the state may make and enforce regulations reasonabl[y] calculated to promote care on the part of all, residents and nonresidents alike, who use its highways." *Hess v. Pawloski*, 274 U.S. 352, 356 (1927). "The license suspension statute serves the remedial purpose of protecting public safety by quickly removing drunk drivers from the road." *Mireles*, 9 S.W.3d at 130; *see Mackey v. Montrym*, 443 U.S. 1, 19 (1979) ("We conclude . . . that the compelling interest in highway safety justifies the Commonwealth in making a summary suspension effective pending the outcome of the prompt postsuspension hearing available."); *Tex. Dep't of Pub. Safety v. Richardson*, 384 S.W.2d 128, 132 (Tex. 1964) (holding that driver's license cases concern "an administrative and regulative power vested in the Texas Department of Public Safety which power has for its purpose the protection of the lives and property of those using the highways"); *Coyle v. State*, 775 S.W.2d 843, 847 (Tex. App.—Dallas 1989, no pet.) ("The use of the public highways by motor vehicles, with its consequent dangers, renders the reasonableness and necessity of regulation apparent. . . . Clearly, there is a compelling state interest in reasonable regulation of the use of the public roadways."). The courts have further recognized that the opportunity to drive on Texas highways is a privilege, not a right. *Tex. Dep't of Pub. Safety v. Schaejbe*, 687 S.W.2d 727, 728 (Tex. 1985); *Richardson*, 384 S.W.2d at 132. Yet "[t]he privilege [of holding a

6

driver's license] is [still] subject to reasonable regulations under the police power in the interest of public safety and welfare . . . ." *Gillaspie v. Tex. Dep't of Pub. Safety*, 152 Tex. 459, 466, 259 S.W.2d 177, 182 (Tex. 1953). For example, relevant to this case, for the privilege of operating a motor vehicle, a driver who is arrested for DWI is deemed to have consented to providing one or more specimens of breath or blood for alcohol concentration testing. TEX. TRANSP. CODE ANN. § 724.011; *see id.* § 601.051 (West, Westlaw through 2015 R.S.) (providing that a person may not operate a motor vehicle unless he maintains financial responsibility for himself and his vehicle); *id.* § 521.292(a)(3) (West, Westlaw through 2015 R.S.) (setting out that the department shall suspend a driver's license if it determines that the driver habitually violates the traffic laws). And while a driver may physically refuse, as in this case, to provide a breath specimen, he may not do so without suffering some consequence. TEX. TRANSP. CODE ANN. §§ 724.013, 724.035; *see Thomas v. State*, 723 S.W.2d 696, 705 (Tex. Crim. App. 1986) (en banc) (holding that, by refusing to provide a breath test, the defendant "accepted those consequences that the State could legitimately apply"); *Growe v. State*, 675 S.W.2d 564, 567 (Tex. App.—Houston [14th Dist.] 1984, no pet.) ("If the driver elects not to take the test, the penalty potentially attaches. His license may be suspended after an administrative hearing before the proper official.").

### III. DISCUSSION[1]

---

[1] Rankin concedes on appeal that he is not challenging the evidentiary basis for the Administrative Law Judge's findings that the Department proved the issues set out in section 724.042 or that his license is subject to a two-year suspension pursuant to section 724.035. *See* TEX. TRANSP. CODE ANN. §§ 724.035, 724.042 (West, Westlaw through 2015 R.S.). Rankin asserts only that the Texas Constitution, the United States Constitution, or both barred the ALJ from entering an order that "The Department is authorized to suspend or deny [Rankin's] driving privileges for the [two-year] period . . . ."

7

## A. Presumption of Vindictiveness

By his first issue, Rankin argues that the Department's suspension of his driver's license is a violation of the exercise of his fundamental rights and that the suspension raised a presumption of vindictiveness, which the Department did not rebut. *See Thigpen v. Roberts*, 468 U.S. 27, 30–31 (1984) (quoting *United States v. Goodwin*, 457 U.S. 368, 377 (1982) (holding that there was a presumption of vindictive prosecution where "Roberts was convicted of a misdemeanor, and exercised his right to a trial de novo, only to be confronted with a felony charge" and "[t]hat charge covered the same conduct as the misdemeanors he sought to appeal"); *Blackledge v. Perry*, 417 U.S. 21, 25–29 (1974) (establishing a rebuttable presumption of unconstitutional vindictiveness when a prosecutor "upped the ante" in response to a defendant's exercise of his right to a trial de novo); *Neal v. State*, 150 S.W.3d 169, 174 n.12 (Tex. Crim. App. 2004) (en banc) (pointing out that "the presumption of vindictiveness prong rarely—if ever—applied outside the context of prior conviction, successful appeal, and post-appeal enhanced charging decision"). But to the extent this complaint could be raised in civil litigation, Rankin did not raise the specter of vindictive prosecution before the ALJ or the trial court. Because he did not do so, we conclude that Rankin has not preserved any vindictive-prosecution claim for our review. *See* TEX. R. APP. P. 33.1 (providing that to preserve error for appellate review, a party must make a timely and sufficiently explicit request, objection, or motion in the trial court); *Gomez de Hernandez v. Bridgestone/Firestone N. Am. Tire, L.L.C.*, 204 S.W.3d 473, 479 n.5 (Tex. App.—Corpus Christi 2006, pet. denied) ("[A]ppellants failed to raise this complaint in the trial court below. Therefore, it is not

8

before us."); *see also Losoya v. State*, No. 13-13-00141-CR, 2015 WL 601969, at \*2 (Tex. App.—Corpus Christi 2015, no pet.) (memo. op., not designated for publication) ("An appellant generally waives claims of judicial and prosecutorial vindictiveness by failing to object at trial."). We overrule Rankin's first issue.

## B. Constitutional Challenges[2]

By issues two, three, and four, Rankin presents constitutional challenges, which we review de novo. *See Fin. Comm'n of Tex.*, 418 S.W.3d at 585–86. As to each issue, Rankin generally argues that certain amendments, articles, or sections of the United States Constitution or the Texas Constitution barred the ALJ from entering an order authorizing the Department to suspend or deny Rankin's driving privileges and the trial court from affirming that order. The Department responds that the suspension of Rankin's driver's license, based on his refusal of a breath test after he had been arrested for DWI, does not violate Rankin's rights under the First, Fourth, Fifth, or Fourteenth Amendments to the United States Constitution or their reciprocal clauses in the Texas

---

[2] We note that Rankin supplemented his initial brief, informing this Court of the following three cases that were granted certiorari by the United States Supreme Court on December 11, 2015 and argued on April 20, 2016: *Beylund v. Levi*, *Minnesota v. Bernard*, and *North Dakota v. Birchfield*. *See Beylund*, 859 N.W.2d 403, 406 (N.D. 2015) (concluding that state's criminal refusal statute did not violate Beylund's constitutional rights), cert. granted, 136 S. Ct. 614 (Dec. 11, 2015); *Bernard*, 859 N.W.2d 762 (Minn. 2015) (same), cert. granted, 136 S. Ct. 615 (Dec. 11, 2015); *Birchfield*, 858 N.W.2d 302 (N.D. 2015) (same), cert. granted, 136 S. Ct. 614 (Dec. 11, 2015). These cases, however, are distinguishable from the present case because the statutes at issue in *Beylund*, *Bernard,* and *Birchfield* make it a criminal offense to refuse to provide a specimen. *See* MINN. STAT. § 169A.20 (West, Westlaw through 2016 R.S.); N.D. CENT. CODE § 39-08-01 (1)–(2) (West, Westlaw through 2015 R.S.); *Beylund*, 859 N.W.2d at 410; *Bernard*, 859 N.W.2d at 765; *Birchfield*, 858 N.W.2d at 304. The Texas statute at issue in this case does not criminalize refusal to provide a specimen. *See* TEX. TRANSP. CODE ANN. § 724.048 (West, Westlaw through 2015 R.S.); *Reynolds v. State*, 4 S.W.3d 13, 21 (Tex. Crim. App. 1999) (en banc) ("[A license revocation administrative proceeding] is not a 'criminal prosecution' and it is not 'essentially criminal.'"). The Texas statute is a provision that serves the purpose of "protecting public safety by quickly removing drunk drivers from the road." *Mireles v. Tex. Dep't. of Pub. Safety*, 9 S.W.3d 128, 130 (Tex. 1999) (per curiam). And even were the Supreme Court to conclude that criminalizing a refusal is unconstitutional, it would be premature for us to speculate as to how that analysis would impact, if at all, Texas's civil statute.

Constitution.   We agree with the Department.

### 1.   Freedom of Speech

By his second issue, Rankin argues that the Texas implied consent statute as applied to him is unconstitutional because it is punishing his expression, "I do not want to blow on your machine."   Rankin claims that suspending his driver's license for exercising his right to say "no" to Officer Villarreal's request to provide a breath specimen, violates his right to freedom of speech, as guaranteed by the First Amendment to the United States Constitution.

"Although it is common to place the burden upon the Government to justify impingements on First Amendment interests, it is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies."   *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 294 n.5 (1984).   In this case, although Rankin claims that the suspension of his driver's license prejudiced his right to freedom of speech, he has not demonstrated that his refusal of Officer Villarreal's request constituted protected speech; Rankin has not demonstrated that the First Amendment even applies.   *See id.*   And, except for asserting a First Amendment right that he claims was prejudiced, Rankin does nothing more to develop his argument or to support it with authority.   *See* TEX. R. APP. P. 38.1(i) (requiring argument with appropriate citation to authority).   In that regard, we conclude that the briefing on this issue is not adequate.   *See id.*   We overrule Rankin's second issue.

### 2.   Freedom from Unreasonable Search

By his third issue, Rankin generally contends that the implied consent statute

10

violates his right to be free from an unreasonable search under the Fourth and Fourteenth Amendments to the United States Constitution and article I, sections 9 and 19 of the Texas Constitution. Rankin more narrowly asserts that Officer Villarreal's failure to obtain a warrant to search Rankin's breath precluded the Department from penalizing him for exercising his Fourth and Fourteenth Amendment guaranteed rights to due process and to security in his person when he refused to provide a specimen for breath testing. He claims that the Department's suspension or denial action is inconsistent with his right not to be penalized or punished for exercising one or more of his constitutional rights. Rankin sets out the following in support of his argument:

> Following the Constitution, the State had to get a warrant to obtain Rankin's breath. The State did not do that, but penalizes Rankin's refusal.
>
> Rankin asked the ALJ to create new law . . . . The ALJ did not. The ALJ just went with the Texas statutes. As Rankin reads the ALJ's ruling, the ALJ ignored the Constitution completely. The Fourth Amendment is bigger than anything coming out of Austin. They did not go get a warrant, but want to take Rankin's license away for two years because he exercised a constitutional right.

We are not persuaded by Rankin's arguments.

Case law provides that when one refuses to provide a breath test when arrested for DWI, the suspension of his driver's license is a regulation that is reasonably calculated to promote care on the part of those who use the highways and to protect the lives and property of those using the highways. *Hess*, 274 U.S. at 356; *Richardson*, 384 S.W.2d at 132. Such regulation serves a remedial purpose by removing drunk drivers from the road. *Mireles*, 9 S.W.3d at 130. Following binding law of the United States Supreme Court and the Texas Supreme Court, we conclude that the regulations found in this

11

implied consent statute do not deprive Rankin of his fourth amendment rights. Instead, they are reasonable regulations under the police power and address the interest of public safety and welfare. *See Gillaspie*, 259 S.W.2d at 182.

Nonetheless, Rankin asserts that *McNeely* provides support for this issue. *See* 133 S. Ct. at 1556. He argues that *McNeely* "demonstrates a first step in the law's progressing evolution limiting the [State Office of Administrative Hearings's] and the Department's exercise of regulatory powers." Rankin submits that "extrapolating from or stretching [the Supreme] Court's opinion in *Missouri v. McNeely*, . . . the substantial rights to be secure in one's person and warrant clauses of the Fourth Amendment made applicable to the States by the due process clause of the Fourteenth Amendment should be construed to pertaining to the implied consent statutes of Texas."

But *McNeely* is a case concerning exigent circumstances and the Fourth Amendment's warrant requirement. 133 S. Ct. at 1556 ("The question presented here is whether the natural metabolization of alcohol in the bloodstream presents a per se exigency that justifies an exception to the Fourth Amendment's warrant requirement for nonconsensual blood testing in all drunk-driving cases."). *McNeely* clarified, but did not overrule *Schmerber v. California*, where the United States Supreme Court held that the dissipation of alcohol from the bloodstream created an exigent circumstance which justified the warrantless collection of a blood specimen from the defendant in that case. *Id.* at 1563; *Schmerber*, 384 U.S. 757, 770–71 (1966).

*McNeely* addressed when one's blood could be drawn without a warrant. *See* 133 S. Ct. at 1556. It did not address whether a driver's license could be suspended for

refusing to provide a breath specimen. Instead, while reasoning that "the general importance of the government's interest in [eradicating the drunken driving problem] does not justify departing from the warrant requirement without showing exigent circumstances that make securing a warrant impractical in a particular case," Justice Sotomayor wrote the following regarding implied consent statutes for the plurality in *McNeely*:

> As an initial matter, States have a broad range of legal tools to enforce their drunk-driving laws and to secure BAC [blood alcohol content] evidence without undertaking warrantless nonconsensual blood draws. For example, all 50 States have adopted implied consent laws that require motorists, as a condition of operating a motor vehicle within the State, to consent to BAC testing if they are arrested or otherwise detained on suspicion of a drunk driving offense. *See* NHTSA Review 173; supra, at 1556 (describing Missouri's implied consent law). Such laws impose significant consequences when a motorist withdraws consent; typically the motorist's driver's license is immediately suspended or revoked, and most States allow the motorist's refusal to take a BAC test to be used as evidence against him in a subsequent criminal prosecution. *See* NHTSA Review 173–175; *see also South Dakota v. Neville*, 459 U.S. 553, 554, 563–564, 103 S. Ct. 916, 74 L. Ed. 2d 748 (1983) (holding that the use of such an adverse inference does not violate the Fifth Amendment right against self-incrimination).

*Id.* at 1565–66. Justice Sotomayor recognized implied consent statutes; acknowledged the consequences of, as in this case, withdrawing implied consent; and cited, as authority, *Neville*, the Supreme Court's prior holding affirming those statutes. *See McNeely*, 133 S. Ct. at 1565–66; *Neville*, 459 U.S. at 560 (holding that revoking a driver's license for one year for refusing a blood-alcohol test is "unquestionably legitimate, assuming appropriate procedural protections"). We find nothing in *McNeely* that disapproves of the implied consent statute that applies in this case and nothing that disapproves of the manner in which the State regulates the privilege of driving.

Moreover, while taking a breath specimen does constitute a search, *see Skinner*

13

*v. Ry. Labor Execs' Ass'n*, 489 U.S. 602, 616–17 (1989), *McNeely* applies to cases where a search is conducted without the person's consent.   133 S. Ct. at 1558 ("We granted certiorari to resolve a split of authority on the question whether the natural dissipation of alcohol in the bloodstream establishes a *per se* exigency that suffices on its own to justify an exception to the warrant requirement for nonconsensual blood testing in drunk-driving investigations.").   In this case, Officer Villarreal requested permission to collect a sample of Rankin's breath.   Rankin refused the request, and Officer Villarreal abided Rankin's refusal.   Officer Villarreal did not forcibly obtain a specimen of Rankin's breath or blood; he did not obtain a specimen without a warrant.   Rankin's ability to refuse a breath or blood test is derived from statute and carries with it the consequences of his choice.   *See Neville*, 459 U.S. at 560; *see also McNeely*, 133 S. Ct. at 1566.

In sum, we conclude that suspending Rankin's driver's license based on his refusal of a breath test does not violate his right to be free from unreasonable searches.   Instead, such reasonable regulation addresses a compelling state interest in the use of the public roadways.   *See Coyle*, 775 S.W.2d at 847.   Moreover, under the facts of this case, there is no question presented to this Court about whether exigent circumstances justified the nonconsensual search of Rankin's breath because there was no nonconsensual search of Rankin's breath.   *See McNeely*, 133 S. Ct. at 1556.   And this Court declines to "stretch" *McNeely* to apply the warrant requirement to the implied consent statutes, as Rankin urges.   Instead, *McNeely* favorably recognized such regulations as those at issue in this case.   *See id.* at 1565–66; *see also Turcios v. Tex. Dep't of Pub. Safety*, No. 13-14-00332-CV, ___ WL ___, at *__ (Tex. App.—Corpus Christi May __, 2016, no pet. h.)

14

(mem. op.).   We overrule Rankin's third issue.

### 3.      Freedom from Self-Incrimination

In his fourth issue, Rankin contends that the actions of the ALJ, the Department, and the trial court, in suspending his driver's license, deprived him of "his federal constitutional right to remain silent."   *See* U.S. CONST. amend. V (providing that no person shall be compelled in any criminal case to be a witness against himself).   Rankin also complains that he was deprived of his state constitutional right not to be compelled to testify against himself.   *See* TEX. CONST. art. I, § 10 ("In all criminal prosecutions the accused shall . . . shall not be compelled to give evidence against himself . . . .").

### a.      The Right to Post-Arrest Silence

Rankin first argues that he had the right to remain silent and refuse to provide a breath specimen "during police warrantless custodial interrogation before he received his Miranda warnings."   *See generally Wainwright v. Greenfield*, 474 U.S. 284, 296 (1986) (discussing post-arrest, post-*Miranda* warning silence); *Miranda v. Arizona*, 384 U.S. 436, 479 (1966) ("[U]nless and until such [*Miranda*] warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him."); *Sanchez v. State*, 707 S.W.2d 575, 579–80 (Tex. Crim. App. 1986) (en banc) ("An accused's right to be free from compelled self-incrimination under the Texas Constitution arises at the moment an arrest is effectuated.").   We agree that Rankin generally had a right to post-arrest silence.   However, courts have concluded that a police officer's request for a breath specimen is not a custodial interrogation within the meaning of *Miranda*, and appellant's choice of whether or not to provide a breath

15

specimen enjoys no *Miranda* protection. *See Pennsylvania v. Muniz*, 496 U.S. 582, 605 (1990) ("We believe that Muniz's statements were not prompted by an interrogation within the meaning of *Miranda*, and therefore the absence of *Miranda* warnings does not require suppression of these statements at trial."); *Neville*, 459 U.S. at 564, n.15 ("[A] police inquiry of whether the suspect will take a blood-alcohol test is not an interrogation within the meaning of *Miranda*. . . . Respondent's choice of refusal thus enjoys no prophylactic *Miranda* protection outside the basic Fifth Amendment protection."); *Bass v. State*, 723 S.W.2d 687, 691 n.8 (Tex. Crim. App. 1986) (en banc) ("In view of our holding that appellant's refusal was not a result of custodial interrogation, we find it unnecessary to resolve whether the evidence shows that Officer Andrews informed him of his *Miranda* rights prior to requesting the breath test."). So because Rankin's refusal was not a result of a custodial interrogation, Officer Villarreal was not required to give Rankin the *Miranda* warnings before requesting a breath specimen. And this argument fails.

Also, even if Rankin had exercised his right to remain silent, by their own terms, the Fifth Amendment and article I, section 10 of the Texas Constitution reach fruition only in criminal cases. *See Chavez v. Martinez*, 538 U.S. 760, 770 (2003) ("Although our cases have permitted the Fifth Amendment's self-incrimination privilege to be asserted in noncriminal cases . . . a violation of the constitutional *right* against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case.") As the United States Supreme Court explained in the following, the right to remain silent may be invoked in any setting, but only to preserve the protections afforded by that right in criminal cases:

16

> The Amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.

*Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973); *accord Chapman v. State*, 115 S.W.3d 1, 5 (Tex. Crim. App. 2003); *see McKune v. Lile*, 536 U.S. 24, 41–43 (2002) (collecting cases where the invocation of the Fifth Amendment forced a person to face an undesirable outcome).

### b. The Right Not to Be Compelled to Present Testimonial Evidence

Rankin's next argument in support of his fourth issue is his assertion that suspending his license for refusing to take a breath test violated his right to be free from compelled self-incrimination. Rankin argues that his refusal of the breath test is testimonial evidence, which he cannot be compelled to provide.

Because this right is rooted in and limited to criminal trials, we look to criminal case law for guidance. The Texas Court of Criminal Appeals has held "that the taking of the breathalyzer test is not a testimonial communication that Article I, Section 10, Texas Constitution, or the Fifth Amendment, United States Constitution, seek to protect." *Rodriguez v. State*, 631 S.W.2d 515, 516 (Tex. Crim. App. 1982); *Griffith v. State*, 55 S.W.3d 598, 603 (Tex. Crim. App. 2001) (en banc) ("Questions normally accompanying the processing of a DWI arrestee do not constitute interrogation. In particular, the admission into evidence of a defendant's refusal to submit to a blood-alcohol test does not offend the Fifth Amendment right against self[-]incrimination."); *McCambridge v. State*, 712 S.W.2d 499, 506 (Tex. Crim. App. 1986) (en banc) ("Not only does the breath

17

testing decision not involve custodial interrogation, it also does not involve the privilege against self-incrimination."). This Court has also addressed this argument and has concluded, in criminal appeals, that evidence of a person's refusal of a breath test is not testimonial evidence that violates a person's rights. *Rodriguez v. State*, 191 S.W.3d 428, 450 (Tex. App.—Corpus Christi 2006, pet. ref'd) (en banc) (holding that the defendant's responses to questions during field sobriety tests and his refusal of a breath test were not testimonial); *Miller v. State*, No. 13-98-00149-CR, 2000 WL 34251150, at *2 (Tex. App.—Corpus Christi July 20, 2000, pet. ref'd) (not designated for publication) ("Miller's refusal to provide a sample of his breath is admissible. Miller's refusal to perform sobriety tests on the videotape is also admissible.") (citations omitted). Likewise, to the extent Rankin might raise this constitutional claim in a criminal proceeding, his refusal to submit to a breath test is not testimonial.[3]

### c. Summary

In sum, while Rankin generally had a right to post-arrest silence, the police officer's

---

[3] We note that Rankin primarily relies on *Oregon v. Fish* in support of his argument that his refusal to perform the breath test was testimonial evidence. *See* 893 P.2d 1023, 1032 (Or. 1995) (en banc). The Oregon Supreme Court reasoned that because an individual's refusal to perform field sobriety tests when admitted into evidence may, by inference, communicate the person's belief that the performance of the tests would be incriminating, such refusal "is 'testimonial' evidence under the self-incrimination clause of Article I, section 12, of the Oregon Constitution." *Id.* at 1028. We decline to be guided by Oregon law.

Rankin also quotes extensively from *New Mexico v. Gutierrez* in support of his post-arrest silence argument. *See generally* 142 N.M. 1, 162 P.3d 156, 162–63 (2007). However, *Gutierrez* involves actual testimonial evidence—providing testimonial answers to a polygraph examiner's questions. *Gutierrez*, 162 P.3d at 158, 161–62; *cf. Dansby v. State*, 398 S.W.3d 233, 241–42 (Tex. Crim. App. 2013) (holding that the State could not revoke the probationer's community supervision based on his assertion of Fifth Amendment rights in response to a request to take a polygraph); *Hoppes v. State*, 725 S.W.2d 532, 536–37 (Tex. App.—Houston [1st Dist.] 1987, no pet.) (holding that statements made before and during a polygraph examination were admissible to impeach the defendant as a prior inconsistent statement, where no reference was made to the polygraph test itself). So *Gutierrez* is distinguishable from the facts of this case, and Rankin's reliance on it is misplaced.

request for a breath specimen is not a custodial interrogation within the meaning of *Miranda*, and Rankin's choice of refusing to provide a breath specimen enjoyed no *Miranda* protection. And even if Rankin's refusal of the breath test could be considered an invocation of his right to remain silent, the constitution guarantees that such silence cannot be used against a person in a criminal case, not in a civil administrative case, such as this one. Finally, Rankin's refusal of the breath test is not testimonial evidence.[4]

So we conclude that the actions of the ALJ, the Department, and the trial court— in suspending his driver's license, based on Rankin's refusal to provide a breath specimen—did not deprive Rankin of his constitutional right to remain silent or his constitutional right not to be compelled to testify against himself. We overrule Rankin's fourth issue.

## C.     Prejudice to Substantial Rights

By his fifth issue, Rankin claims that when the ALJ penalized or punished him by suspending his driver's license or denying his driving privilege for saying "No" to the officer's request for a breath specimen, he was prejudicially deprived of substantial rights. *See* TEX. GOV'T CODE ANN. § 2001.174(2)(A). But section 2001.174(2)(A) of the government code sets out that under this substantial evidence review, we may not reverse the case unless it prejudices the substantial rights of the appellant and is, among other things, in violation of a constitutional or statutory provision.[5] *See id.* The prejudice

---

[4] Because Rankin's refusal is not testimonial evidence, we need not address whether the refusal was compelled. *See* TEX. R. APP. P. 47.1.

[5] Although Rankin contends that the resulting order prejudiced his substantial rights because it was also in excess of the agency's statutory authority, made through unlawful procedure, affected by other error or law, or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of abuse of discretion, *see* TEX. GOV'T CODE ANN. § 2001.174(2)(B)–(D), (F) (West, Westlaw

prong and the violation prong are not alternatives but are conjunctively tied together with "and"; in this case, Rankin must have shown both in order to prevail. We have already concluded, through our de novo review, *see Fin. Comm'n of Tex.*, 418 S.W.3d at 585–86, that the suspension of his driver's license for refusing to provide a breath specimen does not violate a constitutional provision—the second prong of section 2001.174(2) that must be established—so we need not determine the remaining prong. *See* TEX. GOV'T CODE ANN. § 2001.174(2)(A). We overrule this fifth issue.

## IV. CONCLUSION

We affirm the judgment of the trial court, affirming the administrative decision.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the
2nd day of June, 2016.

---

through R.S. 2015), we conclude that, without more, any such argument is inadequately briefed. *See* TEX. R. APP. P. 38.1(i).